**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Joanne Caldiero, *individually and on behalf of all others similarly situated*, <br> *Plaintiffs,* <br><br> v. <br><br> Missouri Higher Education Loan Authority, KeyBank National Association d/b/a Laurel Road, and Pennsylvania Higher Education Assistance Agency d/b/a FedLoan Servicing, *Defendants.* | Civil Action No. <br><br><br> **Jury Trial Demanded** <br><br> **Class Action** |

**COMPLAINT**

## I.   INTRODUCTION

1.      Plaintiff Joanne Caldiero, individually and on behalf of all others similarly situated, brings this class action against Defendants Missouri Higher Education Loan Authority ("MOHELA"), KeyBank National Association d/b/a Laurel Road ("KeyBank"), and the Pennsylvania Higher Education Assistance Agency ("PHEAA") d/b/a FedLoan Servicing for operating and conspiring in the operation of a RICO enterprise to defraud student borrowers eligible for the federal Public Student Loan Forgiveness ("PSLF") program by steering them into costly private-loan refinancings which would never be eligible for forgiveness or any of the other benefits of federal, as opposed to private, student loan obligations.

2.      The average federal student loan borrower would have no reason to refinance into a private student loan obligation. Federal, but not private, student loans can be repaid through various income-driven payment options and were eligible for a payment pause during the pandemic. Moreover, under the PSLF program, qualified borrowers working in the public interest sector (*e.g.,*

school teachers, nurses, public interest attorneys) who make payments for ten years while employed by qualified non-profit employers receive discharges of the remaining balance of their loans.

3.      For a decade, Plaintiff was a PSLF-qualified, federal student loan borrower who, without her knowledge or consent, was misled by the Defendants into refinancing her federal loan into a private student loan, resulting in her losing the benefits of the federal programs, including PSLF, and incurring tens of thousands of dollars in unnecessary, additional debt. She only recently discovered the fraud, in that, for years, Defendant MOHELA falsely represented that her payments were being credited towards her eventual PSLF discharge, and only now, after she had completed ten years of payments and requested her discharge, advised her that she was not eligible for the discharge because she is no longer a federal student loan borrower.

4.      Each of the Defendants benefited financially from the conspiracy. Federal student loan forgiveness threatens Defendant MOHELA's business model by shortening the time frame during which it can derive revenue fees for servicing those loans. Defendant KeyBank, meanwhile, earned loan revenue it never should have earned, from borrowers who had no objective reason to lose the benefits of the PSLF program and who, due to their decades-long commitment to public service, are least able to take on additional, unnecessary debt. And discovery will show that Defendants PHEAA and MOHELA benefited financially from the refinancing of these debts through referral fees or higher servicing fees.

5.      Plaintiff seeks compensation for herself and a proposed Class of all student borrowers who were harmed by Defendants' common course of deceptive conduct by refinancing their federal student loans into private student loans based on Defendants' fraud.

## II.   THE PARTIES

6.      Plaintiff Joanne Caldiero is a resident of East Stroudsburg, Pennsylvania.

7.      Defendant Missouri Higher Education Loan Authority ("MOHELA") is a business incorporated in Missouri with its corporate headquarters in Chesterfield, Missouri.

8.      Defendant KeyBank National Association ("KeyBank") is a national bank which is the principal subsidiary of KeyCorp, a publicly traded bank holding company. KeyBank purchased Laurel Road Bank's digital lending business in January 2019, since which time it has operated the Laurel Road brand as a national digital bank. Upon information and belief, KeyBank and KeyCorp are incorporated in Ohio with their principal place of business in Cleveland, Ohio.

9.      Defendant Pennsylvania Higher Education Assistance Agency ("PHEAA") is a business incorporated in Pennsylvania with its principal place of business in Harrisburg, Pennsylvania. During the relevant period, PHEAA utilized the brand name FedLoan Servicing to service federal student loans, including, for a period of time, as the servicer for federal student loan borrowers actively seeking a PSLF discharge.

## III.   JURISDICTION & VENUE

10.     The Court has subject matter jurisdiction pursuant to 18 U.S.C. § 1964 over Plaintiffs' claims brought under RICO. The Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the action arises under the laws of the United States. The Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) because this action is filed as a class action under Fed. R. Civ. P. 23, the amount in controversy exceeds $5,000,000, and there is minimal diversity of the parties. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

11.     This Court has personal jurisdiction over each Defendant because, among other things, each Defendant: (a) transacted business throughout the United States, including in this District; and/or (b) engaged in a RICO conspiracy that was directed at and had a direct, foreseeable, and intended effect of causing injury to the business or property of persons residing in, located in, or

doing business throughout the United States, including in this District. This Court further has personal jurisdiction over all Defendants in this action pursuant to 18 U.S.C. § 1965.

12.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 and 18 U.S.C. § 1965 because a substantial part of the events or omissions giving rise to the claim occurred, because one or more of the Defendants resided, transacted business, was found, is licensed to do business, and/or has agents in this District, and because the Defendants are subject to personal jurisdiction in this District.

## IV.   THE FACTS

### A.  History of PSLF Program

13.    The Public Service Loan Forgiveness program was created in 2007 as part of the bipartisan College Cost Reduction and Access Act to support America's public service workers faced with financial struggles stemming from student loan debt. *See* 20 U.S.C. § 1001.

14.    The PSLF program is premised on the notion that because public service is vital, yet the pay is often not commensurate with its value or with compensation in the private sector, after ten years of payments, borrowers working in public service should have their remaining student loan balance forgiven so they can afford other financial goals—families, homeownership, retirement, and other major milestones of American life that are otherwise out of reach because of the economic pressures of student debt.[1]

---

[1] See Consumer Financial Protection Bureau ("CFPB"), it (Aug. 2013), https://files.consumerfinance.gov/f/201308_cfpb_public-service-and-student-debt.pdf; CFPB, *Staying on track while giving back: The cost of student loan servicing breakdowns for people serving their communities* (June 2017), https:// files.consumerfinance.gov/f/documents/201706_cfpb_PSLF-midyear-report.pdf ("CFPB Student Loan Servicing Breakdown").

15.     PSLF was designed to support people working in a wide range of high-demand public service careers, from servicemembers and teachers, to police officers and nurses, and the millions of other public servants.

16.     To qualify for PSLF, borrowers must meet four requirements: the borrower (1) must have a qualifying loan; (2) must be enrolled in a qualifying repayment plan; and (3) while the borrower is working for a qualified public service employer, he or she must (4) make 120 on-time, qualified payments. These requirements must be met concurrently—*i.e.*, the 120 payments must be made on a qualifying loan that is enrolled in a qualifying plan while employed by a qualified employer. Student loan servicers, including Defendants PHEAA and MOHELA, were and are responsible for administering each of these requirements.

17.     Defendant PHEAA, operating under the name FedLoan Servicing, was the company originally contracted by the United States Department of Education ("USED") to implement PSLF by servicing the loans of borrowers who have declared their intent to pursue PSLF.

18.     Defendant PHEAA's time as the designated PSLF servicer was marked by extensive managerial failures that blocked borrowers from securing student loan relief, leading two states to sue the company for the harm it caused public service workers. From March 2016 to February 2017, the CFPB received 1,296 complaints about PHEAA's servicing of federal student loans, 22% of which related to PSLF.[2] Then in 2017 and 2018, 10 years after implementation of the law, when eligible borrowers started applying for forgiveness, more than 99 out of every 100 public service workers who applied for loan forgiveness through PSLF were rejected.[3]

---

[2] CFPB, *Staying on track while giving back: The cost of student loan servicing breakdowns for people serving their communities* (June 2017), https:// files.consumerfinance.gov/f/documents/201706_cfpb_PSLF-midyear-report.pdf ("CFPB Student Loan Servicing Breakdown").

[3] U.S. Dept. of Education, Office of Federal Student Aid, FSA Data Center, *Public Service Loan Forgiveness (PSLF) Program Data* (June 30, 2018), https://studentaid.ed.gov/sa/sites/ default/files/fsawg/datacenter/librar y/pslf-report.xls; *see also* NPR, *All Things Considered: Data Show*

19.     A wide range of law enforcement agencies, government auditors, and nonprofit organizations identified serious problems with the implementation and servicing of the PSLF program.[4] This caused USED in October 2021 to overhaul the PSLF program and to finally make hundreds of thousands of borrowers eligible for the relief they were entitled to by law.[5]

20.     In 2022, Defendant PHEAA operating as FedLoan Servicing transferred all federal student loans for borrowers who had indicated their interest in PSLF to Defendant MOHELA, which became the exclusive servicer of PSLF eligible loans.[6] Senator Elizabeth Warren of Massachusetts described the transfer, saying "borrowers can breathe a sigh of relief today knowing that their loans will no longer be managed by PHEAA, an organization that has robbed untold numbers of public servants of debt relief and was recently caught lying to Congress about its atrocious record of fines and penalties."[7]

21.     However, Defendant MOHELA has also proven to be as systematically and recklessly harmful to borrowers in its servicing of federal student loans. For instance, during the

---

*s 99% Of Applicants For A Student Loan Forgiveness Program Were Denied* (Sep. 21, 2018), https://www.npr.org/2018/09/21/650508381/data-shows-99-of-applicants-for-student-loan-forgiveness-denied

[4] Student Borrower Protection Center, *Keeping the Promise of Public Service Loan Forgiveness* (Dec. 19, 2018) at 3, https://protectborrowers.org/wp-content/uploads/2020/01/SBPC-AFT-PSLF-Investigation.pdf ("SBPC Keeping the Promise").

[5] U.S. Department of Education, *U.S. Department of Education Announces Transformational Changes to the Public Service Loan Forgiveness Program, Will Put Over 550,000 Public Service Workers Closer to Loan Forgiveness* (Oct. 6, 2021), https://www.ed.gov/news/press-releases/us-department-education-announces-transformational-changes-public-service-loan-forgiveness-program-will-put-over-550000-public-service-workers-closer-loan-forgiveness.

[6] MOHELA, Financial Statements and Schedule of Expenditures of Federal Awards (As of and for the Years Ended June 30, 2023 and 2022), https://www.mohela.com/DL/common/publicinfo/financialStatements.aspx?idx=2023.

[7] Ayelet Sheffey, Business Insider, *A new student-loan company is now taking over the accounts of public servants seeking debt cancellation* (July 5, 2022), https://www.businessinsider.com/student-loan-company-takes-over-pslf-accounts-debt-cancellation-mohela-2022-7.

transition of the PSLF-eligible loans from Defendant PHEAA to Defendant MOHELA, Defendant

MOHELA was utterly unresponsive to borrower inquiries about the status of their PSLF eligibility.

Borrowers who called were left on telephone lines for hours and were still unable to reach

representatives from MOHELA to help them. And this was at a time when deadlines for certain

PSLF waiver programs were expiring, such that confirmation of status was crucial.[8]  More recently,

with the restart of federal student loan repayments in October 2023, Defendant MOHELA has

attempted to collect miscalculated monthly payment amounts on over 400,000 student borrower

accounts.[9]  In response to these problems, Defendant MOHELA again showed itself to be

systematically unable to respond to borrower issues, with extensive wait times that have led to over

half of borrowers giving up before getting through to someone on the phone.[10]

      22.     Defendant MOHELA has publicly opposed debt relief and forgiveness for federal

student loan borrowers on the basis that such relief deprives it of servicing revenue it would

otherwise earn. This reflects a conflict of interest and perverse incentives for the company. As Persis

Yu, an expert on federal student loans at the Student Borrower Protection Center explained, "When

people's balances go to zero, [servicers] lose customers. But is that not the goal? If that's really true,

isn't that really concerning that it's against the interest of the company that services public service

---

[8] Ayelet Sheffey, Business Insider, *Hours-long hold times with their student-loan company are keeping public servants in a 'limbo period' wondering if they'll get the debt relief they qualify for* (Oct. 22, 2022), https://www.businessinsider.com/student-loan-borrowers-cant-reach-company-mohela-pslf-debt-relief-2022-10.

[9] Tara Siegel Bernard, New York Times, *More Than 400,000 Student Loan Borrowers Had Wrong Monthly Payments* (Oct. 16, 2023), https://www.nytimes.com/2023/10/16/your-money/student-loans-save-mistakes.html.

[10] NPR Transcript, *Federal student loan borrowers     prepare to resume repaying their loans* (Sept. 18, 2023), https://www.npr.org/transcripts/1200076867; Ella Azoulay, Student Borrower Protection Center, *Dropped Calls, Hours on Hold, and Unanswered Questions: Student Loan Borrower Call-In Day Shows Servicers Are Alarmingly Unprepared to Return to Repayment* (Sept. 22, 2023), https://protectborrowers.org/call-in-day-of-action-blog/.

loan forgiveness that's supposed to help borrowers get out of debt [and] help borrowers forgive their loans, that it's going to hurt them financially?"[11]

### B. MOHELA and KeyBank's Operation of an Association-in-Fact Enterprise

23.     As of June 30, 2023, Defendant MOHELA serviced 7.8 million federal student loan accounts representing approximately $344.4 billion in federal student loans,[12] as well as a smaller portfolio of private student loans. On information and belief, its per-loan servicing revenue is higher for private, as opposed to federal loans.

24.     Among the private student loans MOHELA services are those originated by KeyBank under the Laurel Road label.

25.     KeyBank purchased the digital lending business of Laurel Road Bank in early 2019 and has continued to operate the trade name Laurel Road as a national online bank focused on direct consumer lending, including the origination and refinancing of private student loans.[13]

26.     At some point around or prior to 2019, Defendants MOHELA and KeyBank entered into a servicing agreement whereby Defendant MOHELA would act as a servicer for Defendant KeyBank's private student loan portfolio.

27.     Prior to the 2022 transfer of the PSLF portfolio from PHEAA to MOHELA, Defendants MOHELA and PHEAA had a longstanding subcontracting relationship.

---

[11] Jacqui Germain, Teen Vogue, *Student Loan Forgiveness Lawsuits: What to Know About the Legal Challenges* (Oct. 24, 2022), https://www.teenvogue.com/story/biden-student-loan-forgiveness-lawsuits.

[12] MOHELA, Financial Statements and Schedule of Expenditures of Federal Awards (As of and for the Years Ended June 30, 2023 and 2022) at 4, https://www.mohela.com/DL/common/publicinfo/financialStatements.aspx?idx=2023.

[13] KeyCorp Form 10-K for FY 2019, https://www.sec.gov/Archives/edgar/data/91576/000009157620000007/key-123119x10k.htm

28.     For years PHEAA has encouraged federal student loan borrowers to refinance into private student loans, including its own PA Forward Private Student Loan program that it developed for this purpose and implemented in 2018 and 2019.[14] As the facts of this case reveal, during that period of time, PHEAA also referred federal student loan borrowers—including PSLF-qualified borrowers—to MOHELA for such refinancings.

### C.  The Fraudulent Refinancing of Plaintiff Joanne Caldiero's PSLF-Eligible Loan

29.     Plaintiff Joanne Caldiero has been practicing as a registered nurse for over 30 years. She originally obtained her Associates Degree in Nursing in 1989 from Sullivan County Community College and her Bachelors of Science in Nursing in 1998 from the State University of New York, New Paltz.

30.     From approximately 2010 through 2012, Ms. Caldiero attended the University of Phoenix's online course program to obtain two master's degrees, a Masters of Nursing and a Masters of Health Care Administration.

31.     Ms. Caldiero used federal financial aid to pay for both her undergraduate and graduate education.

32.     In September 2012, Ms. Caldiero consolidated her loans into two federal Direct Consolidation Loans, which is a type of federal student loans that is eligible for PSLF. She did so specifically to obtain the benefits of the PSLF program. "Consolidation" is effectively the process of refinancing one or more federal student loans using a new federal student loan. At the time she consolidated, the principal balance of the two loans was $100,660.73. Her interest rate on the loans was fixed at 7.75% APR.

---

[14] PHEAA Annual Financial Report (June 30, 2020 and 2019) at 8, https://www.pheaa.org/about/pdf/financial-reports/annual/2020AuditedFinancialStatements.pdf.

33.     In addition to the PSLF program, borrowers with Direct Consolidation Loans are also eligible for various income-driven repayment terms as an alternative to a standard, fixed repayment schedule. In these repayment programs, the borrower's monthly payment is set using the borrower's income, and if the borrower is unable to repay the loan within a set period of time—usually 20 years—the remaining balance is forgiven.

34.     Direct Loan borrowers can be in both an income-driven repayment program (with a projected discharge after 20 years) and the PSLF program (with the possibility of a discharge after 10 years of payment), meaning that a PSLF-eligible borrower can obtain an income-driven repayment schedule and, if she maintains employment in a PSLF-qualified sector, should be discharged after the shorter—ten year—period.

35.     Plaintiff Caldiero's federal Direct Consolidation Loans were originally serviced by PHEAA, d/b/a FedLoan Servicing. At the time, FedLoan Servicing was servicing most, if not all, federal Direct Loans of borrowers who had indicated an interest in the PSLF program.

36.     Ms. Caldiero is a nurse who, over the entire relevant period, has worked for qualified public service employers, thereby entitling her for PSLF credit for every qualified payment made during her time working.

37.     Since consolidating her loans into the PSLF-eligible Direct Loans, Ms. Caldiero made all required payments. She believes and therefore avers that PHEAA set her payment schedule under one of the income-driven programs but has no knowledge or recall about which of those programs PHEAA used, nor whether PHEAA correctly put her in the most affordable option.

38.     Around the beginning of 2018—in other words, when she was roughly in the sixth year of her 10-year PSLF repayment period—Plaintiff Caldiero was having difficulty paying all her monthly bills, including her student loan payments, and asked Defendant PHEAA for help in evaluating her income and payment schedule. PHEAA recommended that she could reduce her

monthly payment by again refinancing her loans and assured her that this refinancing would preserve her eligibility for PSLF. Because of her earlier refinancing from one type of federal loan into another—done precisely in order to obtain the benefits of PSLF—she had no reason to distrust PHEAA's recommendation.

39.    PHEAA referred Plaintiff to Defendant MOHELA for this second refinancing. Discovery will show that PHEAA obtained a referral fee or some other form of financial benefit from MOHELA for making this referral.

40.    Defendant MOHELA, working with and as an agent of Defendant KeyBank, also represented to Plaintiff that she would still be eligible for PSLF after the refinancing.

41.    Plaintiff believes and therefore avers that, following the referral from PHEAA, around the beginning of 2018, Defendant MOHELA processed a loan transaction through which a Laurel Road private student loan to Plaintiff was originated, with the proceeds from the loan paying off her federal loans.

42.    Defendants MOHELA and KeyBank never informed Plaintiff that they had refinanced the PSLF-eligible federal student loan into a private student loan. Instead, over the next five years, Defendant MOHELA continued to represent to her that her loan was PSLF-eligible. As seen in the printout of the "Public Service Loan Forgiveness (PSLF) Payment Tracker" (hereinafter "PSLF Payment Tracker") provided by Defendant MOHELA as part of Plaintiff's online account and downloaded on December 16, 2023, Defendant MOHELA continued to represent to Plaintiff that her loan was PSLF-eligible and that she had been making qualifying PSLF payments from May 2013 until at least March 2023. *See* Exhibit A.

43.    Up until March 2023, MOHELA's PSLF Payment Tracker falsely referred to Plaintiff's loans with Defendant MOHELA as "1 DL Consolidation Subsidized" and "2 DL

Consolidation Unsubsidized." Upon information and belief, these designations are used to refer to federal direct consolidation loans.

44. In March 2023, when she believed she had reached the 10-year threshold for obtaining PSLF discharge, Plaintiff called Defendant MOHELA in order to inquire whether she had made sufficient qualifying payments to qualify for the discharge.

45. Various agents of Defendant MOHELA, including a Mr. Santiago, a Mr. Coleo, and a Mr. Kahlil (who represented himself as a supervisor with an employee ID number of 2940), spent time reviewing Plaintiff's account and informed her that she met her obligations under PSLF but that she needed to take additional steps to finalize her application by verifying her final three years of employment.

46. After she had followed Mr. Kahlil's instructions, Plaintiff attempted to contact Mr. Kahlil several times in order to confirm her loan forgiveness under PSLF but was unable to contact him.

47. When Plaintiff called Defendant MOHELA's support line, she was informed for the first time that the loans which Defendant MOHELA had for five years represented as federal direct consolidation loans eligible for PSLF forgiveness were in fact private student loans owned by Defendant KeyBank and were not eligible for PSLF.

48. Defendant MOHELA and Defendant KeyBank have been unable to provide documentation of an actual private student loan agreement for Plaintiff. Instead, Defendant MOHELA provided her a document titled "Loan Verification," which includes both Laurel Road and MOHELA logos, but which is not a promissory note or other proof of Plaintiff's agreement to refinance a PSLF-eligible federal loan indebtedness into a non-qualifying, private student loan obligation.

49.     Discovery will show that Plaintiff's experience was not unique and that Defendants PHEAA, MOHELA, and KeyBank had common policies, practices, scripts, and procedures to steer PSLF-eligible federal loan borrowers into private student loan refinancings without disclosing that such refinancing would result in the loss of the opportunity to obtain a PSLF discharge, or, worse, through the use of affirmative, false representations that PSLF eligibility would continue.

50.     At the time that Defendant PHEAA communicated with Plaintiff and referred her to MOHELA and/or KeyBank for private loan refinancing, Defendant PHEAA knew that Plaintiff was PSLF-eligible, knew that refinancing would deprive her of PSLF benefits, did not inform her of these facts, and referred her for private student loan refinancing regardless.

51.     At the time that Defendants MOHELA and KeyBank refinanced Plaintiff's loan, Defendants MOHELA and KeyBank knew that she was PSLF-eligible, knew that refinancing would deprive her of PSLF benefits, did not inform her of these facts, and refinanced her loan regardless.

52.     As a result of this misrepresentation and fraud, rather than being fully discharged of her student loan obligations, Plaintiff remains liable for more than $60,000 in private student loan debt.

**D.  <u>Defendants MOHELA and PHEAA Are Not Entitled to Eleventh Amendment Immunity</u>**

53.     Defendant MOHELA was established with financial and legal independence from the state of Missouri.

54.     Defendant MOHELA has the power "[t]o sue and be sued . . . in any court having jurisdiction of the subject matter and of the parties." Mo. Rev. Stat. § 173.385.1(3).

55.     The State of Missouri is not responsible for Defendant MOHELA's debts. Mo. Rev. Stat. § 173.385.1(6).

56.     Defendant MOHELA has conceded that it—and not the state of Missouri—is legally liable for any judgments against it. *Dykes v. MOHELA*, No. 4:21-CV-00083, 2021 WL 3206691, at *3 (E.D. Mo. July 29, 2021).

57.     Defendant MOHELA has extensive autonomy, including the power to "make and execute contracts, releases, compromises, and other instruments necessary or convenient for the exercise of its powers," Mo. Rev. Stat. § 173.385.1(11), and to contract with any government agency, person, or corporation, Mo. Rev. Stat. § 173.385.1(15).

58.     Defendant MOHELA also has the power "[t]o issue bonds or other forms of indebtedness" and "[t]o acquire, hold, and dispose of personal property." Mo. Rev. Stat. § 173.385.1(6), (14).

59.     Defendant MOHELA also has the power to purchase, sell, and service student loans as well as collect fees related to making and servicing such loans. Mo. Rev. Stat. § 173.385.1(7), (8), (11), (18).

60.     Defendant MOHELA's operations focus primarily on the purchase, sale, and servicing of out-of-state student loans.

61.     Defendant PHEAA was established with financial and legal independence from the Commonwealth of Pennsylvania.

62.     Pennsylvania explicitly disavows liability for all of Defendant PHEAA's debts. 24 Pa. Stat. § 5104(3) ("no obligation of the agency shall be a debt of the State").

63.     Defendant PHEAA's debts are not "payable out of any moneys except those of the corporation." 24 Pa. Stat. § 5104(3).

64.     Aside from state appropriations that go directly to students in the form of education grants, Defendant PHEAA's financial and operational resources derive exclusively from its own operations.

65.     Defendant PHEAA controls all funds accrued and earned by Defendant's student loan operations. 24 Pa. Stat. § 5104(3).

66.     Defendant PHEAA's funds are held in a segregated account apart from the general state funds. 24 Pa. Stat. § 5105.10.

67.     Defendant PHEAA has the power to enter into contracts, sue and be sued, and purchase and sell property in its own name. 24 Pa. Stat. § 5104(1.1)(iii).

68.     Defendant PHEAA's commercial operations focus primarily on out-of-state business.

## V.   CLASS ALLEGATIONS

69.     Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of a class of similarly situated individuals. They seek class certification under Rule 23(b)(2) and (b)(3).

70.     The proposed nationwide class (the "Class") is defined as:

All student loan borrowers who, (a) according to MOHELA's records, had indicated an interest in the Public Service Loan Forgiveness program, and (b) were refinanced into Laurel Road private student loans.

71.     The proposed PHEAA Subclass is defined as:

All members of the Class who were referred to Defendant MOHELA by Defendant PHEAA.

72.     The proposed Pennsylvania Subclass is defined as:

All members of the Class who are residents of Pennsylvania.

73.     The Class is so numerous that joinder of all individuals in the class would be impracticable. Defendant MOHELA currently services over a million loans eligible for PSLF. Even if Defendants only defrauded a small percentage of PSLF borrowers, that number is likely to be in the thousands or tens of thousands. It can be determined from Defendants' records, exactly how many individuals were eligible for PSLF before Defendants fraudulently refinanced their loans into

private loans. For each Class Member, Defendants have names, addresses, email addresses and telephone numbers.

74.     Plaintiff and members of the Class were all injured by the same unlawful conduct, which resulted in all of them losing the economic benefits that they were entitled to as holders of federal student loans.

75.     Plaintiff is an adequate representative of the Class and her claims are typical of those of the Class. There are no issues or defenses unique to Plaintiff, and Plaintiff has no conflicts with members of the Class.

76.     Counsel for Plaintiff are experienced in the prosecution of complex, class-action litigation and have appeared as counsel and as lead counsel in class actions across the United States. Counsel are providing and will provide an unusual level of specialized knowledge and skill. Langer, Grogan & Diver PC is a Philadelphia-based class action firm that has successfully handled complex class cases, including those involving massive RICO frauds in the student loan market.

77.     There are issues of fact and law common to the Class that will predominate over any individual issues because Defendants have engaged in a common course of fraudulent conduct through their conspiracy. Some of these include:

> a.  Whether Defendants utilized a common script to refer PSLF-interested borrowers for private refinancing;
>
> b.  Whether Defendants misrepresented the eligibility of refinanced loans for the PSLF program;
>
> c.  Whether Defendants concealed from Class Members that they were no longer eligible for PSLF by falsely representing their payments on a PSLF eligibility tracker;

d.   Whether Defendants MOHELA and KeyBank constitute an Association-in-Fact

RICO Enterprise and whether they conducted this Enterprise through a pattern of

racketeering activity;

e.   Whether Defendant PHEAA knowingly facilitated the RICO Enterprise.

78.   A class action is superior to other available methods for the fair and efficient

adjudication of this controversy. The individual claims of the class members are too small to warrant

their bringing individual actions. Individualized litigation would create the danger of inconsistent or

contradictory judgments arising from the same set of facts. Individualized litigation would also

increase the delay and expense to all parties and the court system from the issues raised by this

action. By contrast, the class action device provides the benefits of adjudication of these issues in a

single proceeding, economies of scale, and comprehensive supervision by a single court, and

presents no unusual management difficulties under the circumstances here. To the best of plaintiffs'

knowledge, there is no other action brought on behalf of the class against the Defendants.

## VI.   CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### Operation of RICO Enterprise, 18 U.S.C. § 1962(c)
### (Against Defendants MOHELA and KeyBank)

79.   Plaintiffs incorporate and reallege the preceding paragraphs as though fully set forth

herein.

80.   Going back at least six years and continuing to the present time, Defendants

MOHELA and KeyBank have operated an "enterprise" consisting of an "association-in-fact" as

those terms are used in 18 U.S.C. § 1961(4) (the "Fraudulent Student Loan Refinancing

Enterprise").

81.     The Defendants making up the enterprise had a common purpose to steer Class members into private student loans and fraudulently deprive them of their benefits and entitlements under the federal loan programs for their own profit.

82.     The Defendants had direct business relationships with each other through their referral and servicing relationships.

83.     The association-in-fact enterprise had longevity sufficient to permit the Defendants to carry out the enterprise's purpose, starting from its inception sometime after the creation of the PSLF program and lasting at least through March 2023 when the fraud was revealed.

84.     The Fraudulent Student Loan Refinancing Enterprise used the mails and interstate wire systems in carrying out this fraud, among other ways, through its communication with borrowers and collection of payments via the mail and the wire systems, in violation of 18 U.S.C. § 1341(mail fraud) and § 1343 (wire fraud).

85.     Defendants MOHELA and KeyBank played distinct roles in the operation, management, and control of the enterprise through this pattern of racketeering activity. Defendant MOHELA steered class members into fraudulent private refinancing of their loans and coordinated that with Keybank. Defendant MOHELA continued to service the loans that KeyBank then ostensibly owned while concealing the fraud by representing to Class members that the loans were still federal student loans eligible for PSLF. Defendant KeyBank financed these clandestine refinancings and retained Defendant MOHELA as the servicer of the loans to collect payments and represent to Class members that the loans were still federal student loans eligible for PSLF.

86.     Defendant MOHELA and KeyBank are each a "person" as that term is used in 18 U.S.C. § 1961(3).

87.     Defendants MOHELA and KeyBank knowingly and with intent to defraud took steps to advance the fraud and to conceal the fraud from consumers and regulators.

88.     Plaintiffs were economically harmed by the racketeering conduct of Defendants' enterprise through their loss of PSLF eligibility, including the additional payments made and the additional debt incurred.

89.     Plaintiffs and the other Class members are entitled to actual damages, trebled damages, and attorney fees and costs.

## SECOND CAUSE OF ACTION
### Conspiring in a RICO Enterprise, 18 U.S.C. § 1962(d)
### (Against All Defendants)

90.     Plaintiffs incorporate and reallege the preceding paragraphs as though fully set forth herein.

91.     The conduct of Defendants MOHELA and KeyBank in furthering the aims of the RICO Enterprise, as stated above, was knowing and intentional and constitutes conspiracy in the operation of a RICO Enterprise.

92.     Defendant PHEAA, with knowledge of the fraudulent purposes underlying the Fraudulent Student Loan Refinancing Enterprise, agreed to assist the Enterprise by referring PSLF-eligible borrowers like Plaintiff to MOHELA.

93.     Defendant PHEAA knowingly misrepresented that PSLF-eligible borrowers would maintain their PSLF eligibility following the private refinancing offered by MOHELA and KeyBank.

94.     Plaintiffs and the other Class members are entitled to actual damages, trebled damages, and attorney fees and costs.

## THIRD CAUSE OF ACTION
### Violation of Ohio's Consumer Sales Practices Law, Ohio Rev. Code Ann. §§ 1345.01 *et seq.*
### (Against Defendant KeyBank)

95.     Plaintiffs incorporate and reallege the preceding paragraphs as though fully set forth herein.

96.     Ohio's Consumer Sales Practices Law prohibits any "supplier [to] commit an unfair or deceptive act or practice in connection with a consumer transaction." Ohio Rev. Code Ann. §§ 1345.02(A).

97.     The law defines such unfair or deceptive acts or practices to include representing that the item sold has characteristics or benefits that it does not have. Ohio Rev. Code Ann. §§ 1345.02(B).

98.     Defendant KeyBank is a "supplier" under the law.

99.     The refinancing of student loans constitutes a consumer transaction.

100.    The misrepresentations that Class Members' student loans would still be PSLF-eligible following refinancing, whether made by Defendant KeyBank or by Defendant MOHELA acting as Defendant KeyBank's agent, were unfair or deceptive practices by their false representations that the refinanced loans had characteristics or benefits that they do not have.

101.    Further, Defendant KeyBank's operation of a conspiracy to systematically carry out these deceptions also independently constitutes unfair or deceptive acts and practices.

102.    Plaintiffs and the other Class members are entitled to actual damages, trebled damages, an injunction requiring recission of the refinancings, and attorneys fees and costs.

**FOURTH CAUSE OF ACTION**
**Violation of Missouri's Merchandising Practices Law, Mo. Ann. Stat. §§ 407.010**
*et seq.*
**(Against Defendant MOHELA)**

103.    Plaintiffs incorporate and reallege the preceding paragraphs as though fully set forth herein.

104.    Missouri's Merchandising Practices Law prohibits "any person" to use "any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce." Mo. Ann. Stat. § 407.020.

105.     Defendant MOHELA is a person.

106.     The refinancing of student loans constitutes the sale of merchandise in trade or commerce.

107.     Plaintiffs and Class Members obtained their student loans primarily for personal, family or household purposes and suffered ascertainable losses of property or money as a result of Defendant MOHELA's unlawful practices.

108.     Defendant MOHELA's misrepresentations that Class Members' student loans would still be PSLF-eligible following refinancing constitute "deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact."

109.     Further, Defendant MOHELA's operation of a conspiracy to systematically carry out these deceptions also independently constitutes "deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact."

110.     Plaintiffs and the other Class members are entitled to actual damages, punitive damages, an injunction requiring forgiveness of their student loans, and attorney fees and costs.

**FIFTH CAUSE OF ACTION**
**Violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law**
**("UTPCPL"), 73 P.S. §§ 201-1 *et seq.***
**(Against Defendant PHEAA)**

111.     Plaintiffs incorporate and reallege the preceding paragraphs as though fully set forth herein.

112.     The Pennsylvania UTPCPL prohibits the use of "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

113.     The refinancing of the student loans of Plaintiffs and Class members constitutes the purchase of goods or services for personal purposes.

114.     Plaintiffs and Class members have suffered ascertainable loss of the money they paid pursuant to the refinancing and the additional debt they incurred.

115.     The monetary losses suffered by Plaintiffs and Class members are directly attributable to methods, acts, or practices declared unlawful by 73 P.S. § 201-3 and § 201-2(4), by, among other violations, the representation that goods or services have characteristics, benefits, or quantities that they did not have, § 201-2(4)(v).

116.     Plaintiffs and Class members in the PHEAA subclass are entitled to treble damages and attorneys' fees and costs for this violation.

### SIXTH CAUSE OF ACTION
### Violation of Pennsylvania UTPCPL as to Pennsylvania Subclass
### (Against All Defendants)

117.     Plaintiffs incorporate and reallege the preceding paragraphs as though fully set forth herein.

118.     The Pennsylvania UTPCPL prohibits the use of "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

119.     The refinancing of the student loans of Plaintiffs and Pennsylvania Subclass Members constitutes the purchase of goods or services for personal purposes.

120.     Plaintiffs and Pennsylvania Subclass Members have suffered ascertainable financial loss as a result of the refinancing.

121.     The monetary losses suffered by Plaintiffs and Pennsylvania Subclass Members are directly attributable to methods, acts, or practices declared unlawful by 73 P.S. § 201-3 and § 201-2(4), by, among other violations, the representation that goods or services have characteristics, benefits, or quantities that they did not have, § 201-2(4)(v).

122.     Plaintiffs and Pennsylvania subclass members are entitled to treble damages and attorney fees and costs for this violation.

### VII.   REQUESTED RELIEF

Plaintiffs request the following relief:

a.   That the Court determine that this action may be maintained as a class action under Fed. R. Civ. P. 23(b)(2) and (b)(3), and direct that notice of this action, as provided by Fed. R. Civ. P. 23(c)(2), be given to Class members;

b.   That the Court enter an order declaring that Defendants' actions, as set forth in this Complaint, violate the law;

c.   That the Court hold Defendants jointly and severally liable for the injuries caused by each one of them and award Plaintiffs and the other Class members actual damages;

d.   That the Court award Plaintiffs and Class members trebled damages;

e.   That the Court award Plaintiffs and Class members punitive damages;

f.   That the Court order the forgiveness of any outstanding loan amounts;

g.   That the Court award Plaintiffs and the other Class members pre- and post-judgment interest on any recovery;

h.   That the Court award Plaintiffs their costs of suit, including reasonable attorneys' fees and expenses;

i.   That the Court enjoin Defendants from continuing such illegal conduct;

j.   That the Court award such other relief as the Court may deem just and proper.

### VIII.   JURY DEMAND

Plaintiff Joanne Caldiero and the proposed Class demand a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted,

Date: February 22, 2024

/s/ *Irv Ackelsberg*
LANGER, GROGAN & DIVER P.C.
Irv Ackelsberg, PA Bar No. 23813
iackelsberg@langergrogan.com

John J. Grogan, PA Bar No. 72443
jgrogan@langergrogan.com
David A. Nagdeman, PA Bar No. 327652
(*pro hac vice* pending)
dnagdeman@langergrogan.com
1717 Arch St., Ste 4020
Philadelphia, PA 19103
(215) 320-5660
*Attorneys for Plaintiffs*