# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| Joanne Caldiero, *individually and on behalf of all others similarly situated* | |
| *Plaintiff,* | CIVIL ACTION |
| v. | Case No. 3:24-cv-00315-JKM |
| Missouri Higher Education Loan Authority, KeyBank National Association d/b/a Laurel Road, and Pennsylvania Higher Education Assistance Agency d/b/a FedLoan Servicing, | (U.S.D.J. Julia K. Munley) |
| *Defendants.* | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MOHELA'S MOTION TO DISMISS UNDER RULES 9(b) AND 12(b)(6)

Thomas F. Burke (PA 320311)
**Ballard Spahr LLP**
1735 Market Street, 51st Floor
Philadelphia, Pennsylvania 19103
T: 215.665.8500
burket@ballardspahr.com

Matthew D. Guletz (*admitted pro hac vice*)
**THOMPSON COBURN LLP**
 mguletz@thompsoncoburn.com
One US Bank Plaza
St. Louis, MO 63101
Telephone: 314-552-6000

*Counsel for Defendant Higher Education Loan Authority of the State of Missouri*

**Table of Contents**

I.      INTRODUCTION ........................................................................................ 1

II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY ............ 2

        A.    The Higher Education Act, Direct Loan Program, and Public
              Service Loan Forgiveness Program ...................................................... 2

        B.    Caldiero's Claims ............................................................................... 5

        C.    Procedural History .............................................................................. 7

III.    STANDARD OF REVIEW ...................................................................... 7

IV.     ARGUMENT ............................................................................................ 8

        A.    Caldiero fails to sufficiently plead the basis for her fraud
              claims ................................................................................................. 10

              1.    Overview ................................................................................... 10

              2.    Affirmative Statements .............................................................. 12

              3.    Omissions ................................................................................... 14

              4.    Post-Refinancing Statements .................................................... 15

        B.    Caldiero fails to plead a civil RICO claim because she has not
              alleged a "pattern of predicate acts." ................................................ 16

        C.    Caldiero fails to plead an MMPA claim because MOHELA is
              not a "person" under the MMPA ....................................................... 20

        D.    Caldiero fails to plead a UTPCPL claim because she does not
              identify any false advertisements. .................................................... 22

V.      CONCLUSION ........................................................................................ 22

# Table of Authorities

**Page(s)**

## Cases

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................................2, 8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 554 (2007).............................................................................................8

*Bottorff-Arey v. Truman State Univ.*,
633 S.W.3d 508 (Mo. Ct. App. 2021) ..............................................................21

*Brown v. Philip Morris, Inc.*,
250 F.3d 789 (3d Cir. 2001) ...............................................................................7

*Browning v. Anheuser-Busch*,
539 F. Supp. 3d 965 (W.D. Mo. 2021).............................................................12

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997) ...........................................................................14

*Butakis v. NVR, Inc.*,
668 F. Supp. 3d 349 (E.D. Pa. 2023)................................................................12

*Cal. Pub. Emp. Ret. Sys. v Chubb Corp.*,
394 F.3d 126 (3d Cir. 2004) ...............................................................................8

*Catalus Capital USVI, LLC v. ServiceMaster Co., LLC*,
No. 2017-17, 2019 U.S. Dist. LEXIS 43391 (D.V.I. Mar. 18, 2019) ...............14

*Ctr. for Immigration Studies v. Cohen*,
806 Fed. Appx. 7 (D.C. Cir. 2020) ...................................................................20

*Dicicco v. Citizens Fin. Grp., Inc.*,
No. 15-267, 2015 U.S. Dist. LEXIS 120798 (E.D. Pa. Sep. 10,
2015) ...................................................................................................................22

*Frederico v. Home Depot*,
507 F.3d 188 (3d Cir. 2007) .............................................................................10

*Grant v. Turner*,
505 Fed. Appx. 107 (3d Cir. 2012)....................................................................10

*H.J. Inc. v. Northwestern Bell Tel. Co.*,
492 U.S. 229 (1989)..................................................................................*passim*

*Hemi Group, LLC v. City of New York*,
559 U.S. 1 (2010)..............................................................................................15

*Hlista v. Safeguard Props., LLC*,
649 Fed. Appx. 217 (3d Cir. 2016)...................................................................11

*Home Orthopedics Corp. v. Rodríguez*,
781 F.3d 521 (1st Cir. 2015)............................................................................20

*Jennings v. Auto Meter Prods.*,
495 F.3d 466 (7th Cir. 2007) ...........................................................................17

*Kehr Packages v. Fidelcor, Inc.*,
926 F.2d 1406 (3d Cir. 1991) ..........................................................................19

*Kelly v. Ocwen Fin. Corp.*,
No. 3:17-CV-32, 2017 U.S. Dist. LEXIS 37992 (M.D. Pa. March
15, 2017) ...........................................................................................................13

*Kirwin v. Sussman Auto.*,
149 A.3d 333 (Pa. Super. Ct. 2016)..................................................................15

*Klineburger v. Kell*,
No. 16-5637, 2017 U.S. Dist. LEXIS 65650 (E.D. Pa. May 1,
2017) .................................................................................................................19

*Kolar v. Preferred Real Estate Invs., Inc.*,
361 Fed. Appx. 354 (3d Cir. 2010)...................................................................17

*LabMD Inc. v. Boback*,
47 F.4th 164 (3d Cir. 2022) .............................................................................11

*Landair Transp., Inc. v. Del's Truck & Auto Repair*,
No. 17-cv-0723, 2018 U.S. Dist. LEXIS 26519 (M.D. Pa. Feb. 20,
2018) ...................................................................................................................3

*Lum v. Bank of Am.*,
    361 F.3d 217 (3d Cir. 2004) ........................................................................10, 12

*Luzerne County Ret. Bd. v. Makowski*,
    627 F. Supp. 2d 506 (M.D. Pa. 2007) ................................................................17

*Northeast Revenue, Servs, LLC v. Maps Indeed, Inc.*,
    No. 3:14-cv-00852, 2015 U.S. Dist. LEXIS 139253 (M.D. Pa. Oct.
    13, 2015) .......................................................................................................11, 17

*Owen v. GMC*,
    533 F.3d 913 (8th Cir. 2008) ............................................................................15

*In re Rockefeller*,
    311 F.3d 198 (3d Cir. 2002) ...............................................................................8

*Seldon v. Home Loan Servs.*,
    647 F.Supp. 2d 451 (E.D. Pa. 2009) ..................................................................22

*Silverstein v. Percudani*,
    207 Fed. Appx. 238 (3d Cir. 2006).....................................................................10

*Twardzik v. HP Inc.*,
    No. 22-2650, 2023 U.S. App. LEXIS 23740 (3d Cir. Sept. 7, 2023).................14

*United States v. Pharis*,
    298 F.3d 228 (3d Cir. 2002) ..............................................................................11

*Zahl v. N.J. Dep't of Law & Pub. Safety Div. of Consumer Affairs*,
    428 Fed. Appx. 205 (3d Cir. 2011).....................................................................19

**Statutes**

73 P.S. § 201-2(4)(v)...................................................................................................22

73 P.S. §201-9.2(a) .....................................................................................................15

18 U.S.C. § 1961 .........................................................................................................11

18 U.S.C. § 1961(1) .....................................................................................................11

18 U.S.C. § 1962(a) ..................................................................................................9, 16

20 U.S.C. §§ 1071–1098ee ..........................................................................................2

20 U.S.C. §§ 1087a–1087j ............................................................2

20 U.S.C. § 1087e(m) ...................................................................3

20 U.S.C. § 1087f(a) .....................................................................2

20 U.S.C. § 1087f(b)(2) ................................................................2

20 U.S.C. § 1087f(b)(4) ................................................................2

Higher Education Act, 20 USC §§ 1070-1098e ......................2, 3

Missouri Merchandising Practices Act, RsMo. §§ 407.005-407.2090............*passim*

Pennsylvania Unfair Trade Practices and Consumer Protection Law,
   73 P.S. §§ 201-1 - 201-10 ....................................................*passim*

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§
   1961-1990 .............................................................................*passim*

RSMo. § 173.360 .....................................................................4, 21

RSMo. § 173.385.1(18) ..................................................................4

RSMo. § 173.415 ............................................................................4

RSMo. § 351 .................................................................................21

RSMo. § 355 .................................................................................21

RSMo. § 407.010(4) ......................................................................20

RSMo. § 407.010(5) ...................................................................9, 21

RSMo. § 407.020 ..........................................................................21

RSMo. § 407.020.1 ........................................................................20

RSMo. § 407.025.1 .................................................................9, 20, 21

**Other Authorities**

34 C.F.R. § 685.219 .......................................................................3

34 C.F.R. § 685.219(c)(1) ..............................................................3

34 C.F.R. § 685.219(c)(1)(iii) .............................................................................3, 14

Consumer Financial Protection Bureau, Should I consolidate or
    refinance my student loans?,
    https://www.consumerfinance.gov/ask-cfpb/should-i-consolidate-
    refinance-student-loans-en-561/ (last accessed May 10, 2024) ........................16

Fed. R. Civ. P. 9(b) ....................................................................................*passim*

Fed. R. Civ. P. 12(b)(6)..............................................................................7, 8, 9, 22

Federal Student Aid, PSLF Program Transitioning from FedLoan
    Servicing to MOHELA, https://fsapartners.ed.gov/fsa-
    print/publication/1003919 (last accessed April 22, 2024)...................................4

Federal Student Aid, Public Service Loan Forgiveness (PSLF),
    https://studentaid.gov/manage-loans/forgiveness-
    cancellation/public-service (last accessed April 24, 2024) .................................3

## I.      INTRODUCTION

In this putative class action against the Higher Education Loan Authority of the State of Missouri (MOHELA) (Plaintiff's current student loan servicer), Pennsylvania Higher Education Assistance Agency (PHEAA) (her previous student loan servicer), and KeyBank National Association (her private lender), Plaintiff Joanne Caldiero alleges an implausible civil RICO conspiracy to defraud student loan borrowers based on Defendants' supposed mischaracterization of an easily verifiable point of federal law. Her claims are based entirely on unsubstantiated oral statements allegedly made *over six years ago by unspecified individuals* in connection with refinancing her federal student loans into a private student loan. The Complaint fails to satisfy Rule 9(b)'s requirement that she plead fraud with particularity, and should be dismissed on that basis.

Further, Congress intended RICO "to combat organized crime," and "was concerned . . . with long-term criminal conduct." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 242, 248 (1989). To that end, a RICO plaintiff must allege a pattern of criminal acts that "amount[s] to or pose[s] a threat of continued criminal activity." *Id.* at 239. Caldiero's key assertion is that she was told, in connection with refinancing her federal student loans into a private student loan, that she would remain eligible for Public Service Loan Forgiveness (PSLF)—a federal program that

forgives federal student loans after 10 years of payments while working for a qualifying employer—and that she then refinanced and unexpectedly lost that eligibility. But that amounts to a single isolated transaction as to a single student loan borrower. Caldiero merely speculates that MOHELA made similar statements to other borrowers as part of a pattern of criminal conduct. The bar for pleading a serious assertion of widespread criminal conduct under the RICO statute is not so low, and requires dismissal of Caldiero's RICO claims.

For these reasons, set forth more fully below, the Court should dismiss the Complaint as to all claims asserted against MOHELA.

## II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

### A.   The Higher Education Act, Direct Loan Program, and Public Service Loan Forgiveness Program

Under the Higher Education Act (HEA), the U.S. Department of Education (the Department) has authority to issue federal loans to student borrowers. *See* 20 U.S.C. §§ 1071–1098ee. In the 1990s, the federal government began originating Direct Loans under the William D. Ford Direct Loan Program. *See* 20 U.S.C. §§ 1087a–1087j. Congress directed the Department to contract with third parties for servicing these loans. 20 U.S.C. § 1087f(a), (b)(2), (b)(4).

---

[1]   The factual allegations are taken from the Complaint and other sources of which this Court may take judicial notice, and are accepted as true solely for purposes of this motion. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

Congress created the PSLF program in 2007 as a conditional opportunity for student borrowers to seek forgiveness of their student loan balance. *See* 20 U.S.C. § 1087e(m); 34 C.F.R. § 685.219. Under the PSLF program, the federal government will forgive any balance on qualifying Direct Loans after (a) 120 separate, on-time monthly payments; (b) made under a qualifying repayment plan; (c) while the borrower is working full-time; (d) for a qualifying public-service employer. 34 C.F.R. § 685.219(c)(1). It is a matter of longstanding public record that private loans (i.e., those made by private lenders that are not insured or guaranteed by the federal government) have never been eligible for PSLF. *See id.* § 685.219(c)(1)(iii)) (limiting applicability to "eligible Direct loans"); Federal Student Aid, Public Service Loan Forgiveness (PSLF), *available at* https://studentaid.gov/manage-loans/forgiveness-cancellation/public-service (last accessed April 24, 2024).[2]

MOHELA was created by the State of Missouri in 1981 to ensure that all eligible postsecondary education students have access to guaranteed student loans. Subsequent legislation expanded MOHELA's powers to finance, originate, acquire, and service student loans, including, but not limited to, those guaranteed or insured pursuant to the HEA. MOHELA, organized under the Missouri Higher Education

---

[2] This Court may take judicial notice of the content of sources not reasonably subject to dispute, such as governmental websites. *See, e.g., Landair Transp., Inc. v. Del's Truck & Auto Repair*, No. 17-cv-0723, 2018 U.S. Dist. LEXIS 26519, *7 n.1 (M.D. Pa. Feb. 20, 2018).

Loan Authority Act, is a public instrumentality and a body politic and corporate of the State of Missouri. RSMo. § 173.415 ("The authority is hereby declared to be performing a public function and to be a separate public instrumentality of the state of Missouri.")

MOHELA's mission is "to assure that all eligible postsecondary education students have access to student loans that are guaranteed or insured, or both," and to provide funding for capital and technology projects at Missouri's public colleges and universities. RSMo. § 173.360. MOHELA is also authorized to service student loans, regardless of whether such student loans are originated in Missouri or outside Missouri. RSMo. § 173.385.1(18).

In 2011, MOHELA was selected through a competitive process by the Department to service Direct Loans on a national basis. MOHELA remains a third-party agent of the Department and is not a party to the underlying Direct Loan contracts between the Department and its borrowers. In 2022, the Department transitioned exclusive responsibility for PSLF loan servicing from PHEAA to MOHELA. *See* Federal Student Aid, PSLF Program Transitioning from FedLoan Servicing to MOHELA, *available at*   https://fsapartners.ed.gov/fsa-print/publication/1003919 (last accessed April 22, 2024). MOHELA also contracts to perform loan servicing for private student lenders such as Defendant KeyBank, doing business as Laurel Road. Compl. (ECF No. 1) ¶¶ 24–26.

4

## B.    Caldiero's Claims

Caldiero is a registered nurse who took out student loans to pay for her education, which included an Associate's Degree (1989), a Bachelor's Degree (1998), and two Master's Degrees (2012). *Id.* ¶¶ 29–31. In September 2012, Caldiero consolidated her loans into two federal Direct Consolidation Loans with a combined principal balance of approximately $100,660. *Id.* ¶ 32. Caldiero consolidated into federal loans because she was working for a PSLF-eligible employer and hoped to eventually obtain PSLF forgiveness. *Id.* ¶¶ 36, 38.

From 2012 to 2018, Caldiero's federal loans were serviced by PHEAA. *Id* ¶¶ 34, 37. "Around the beginning of 2018," Caldiero contacted PHEAA about her loan repayment plan because she was having difficulty making payments. *Id.* ¶ 38. PHEAA, through an unknown employee, "recommended" to Caldiero that she could reduce her monthly payment by refinancing her loans while preserving her eligibility for PSLF. *Id.* ¶ 38. PHEAA then "referred" Caldiero to MOHELA for refinancing, which Caldiero pleads was in exchange for a referral fee. *Id.* ¶ 39. An unidentified person at MOHELA, ostensibly as an agent of KeyBank, then "represented to Caldiero that she would still be eligible for PSLF after the refinancing." *Id.* ¶ 40.

Later, but still "around the beginning of 2018," MOHELA "processed a loan transaction" under which Caldiero's loans were refinanced, supposedly without her knowledge, into a *private* loan offered by Laurel Road. *Id.* ¶¶ 41–42. Between the

2018 refinancing and March 2023, MOHELA in some way or fashion "continued to represent to her that her loan was PSLF-eligible." *Id.* ¶ 42. She also avers that in December 2023, she accessed a "Public Service Loan Forgiveness (PSLF) Payment Tracker" (the PSLF Payment Tracker) provided by MOHELA, and that this tracker referred to her loans as "1 DL Consolidation Subsidized" and "2 DL Consolidation Unsubsidized." Compl. ¶¶ 42–43 (referring to "Direct Consolidation Loans"). At that time, the tracker showed (with few exceptions) monthly payments from May 2013 until March 2020, with "PSLF, TEPSLF," listed under program and "Employment Not Certified," "Qualifying – Special Waiver," or "Qualifying" listed for each payment. *See* Compl. Ex. A.

In 2023, believing she had made the 10 years of qualifying payments needed for forgiveness, Caldiero called MOHELA and was allegedly told by certain MOHELA employees that she had met her payment obligations but needed to verify her final three years of employment in order to complete her PSLF application. Compl. ¶¶ 44–45. Caldiero then called MOHELA's support line after verifying her employment, and was informed that her loan was not eligible for PSLF because it is a private loan. Compl. ¶¶ 46–47.

Caldiero now speculates that Defendants "had common policies, practices, scripts and procedures to steer PSLF-eligible federal loan borrowers into private stu-

6

dent loan refinancings," either affirmatively or by omission, cultivating the impression that the borrowers would remain PSLF-eligible. *Id.* ¶ 49. She baselessly contends that Defendants fraudulently steered her into refinancing on that basis. *Id.* ¶ 50–51. Caldiero currently has $60,000 in private student loans that, in the absence of refinancing, she believes would have been forgiven. *Id.* ¶ 52.

### C.    Procedural History

Caldiero filed the Complaint as a putative class action in February 2024 against Defendants MOHELA, Laurel Road, and PHEAA. *See* ECF No. 1. Relevant here, the Complaint alleges against MOHELA: operation of a RICO enterprise (Count I), conspiring in a RICO enterprise (Count II), violation of Missouri's Merchandising Practices Act (Count IV), and violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law as to a Pennsylvania subclass (Count VI). Compl. ¶¶ 79–122.[3]

## III.   STANDARD OF REVIEW

When considering a motion to dismiss under Rule 12(b)(6), a court must accept all well-pleaded allegations of material fact as true and draw all reasonable inferences in favor of the plaintiff. *Brown v. Philip Morris, Inc.*, 250 F.3d 789, 796

---

[3]    Caldiero's claims for violation of Ohio's Consumer Sales Practices Law (Count III) and violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law (Count V) are not pleaded against MOHELA.

(3d Cir. 2001). The court, however, need not accept as true a legal conclusion presented as a factual allegation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).

This standard is heightened for fraud claims. Under Rule 9(b), a party must "state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b). "Failure to meet the threshold pleading requirements demanded by [Rule 9(b)] justifies dismissal[,]" as fraud allegations "may not benefit from inferences flowing from vague or unspecific allegations—inferences that may arguably have been justified under a traditional Rule 12(b)(6) analysis." *Cal. Pub. Emp. Ret. Sys. v Chubb Corp.*, 394 F.3d 126, 145 (3d Cir. 2004) (citing *In re Rockefeller*, 311 F.3d 198, 224 (3d Cir. 2002)) (internal citations and quotations omitted).

## IV.   ARGUMENT

Caldiero's claims against MOHELA should be dismissed for four reasons. First, Caldiero's claims *all* rely on a single representation allegedly made orally by an unspecified MOHELA employee on an unspecified date in 2018, over six years ago. Her bare-bones description of the circumstances surrounding that crucial assertion fails to comport with her obligation to plead fraud with particularity. Nor can Caldiero sustain her claims based on statements allegedly made *after* her loans were

refinanced because these representations did not cause her alleged injury. The Complaint should be dismissed on that basis.

Second, the civil RICO statute requires a plaintiff to prove, among other things, that a defendant engaged in "a *pattern* of racketeering activity." 18 U.S.C. § 1962(a) (emphasis added). The Supreme Court has instructed that this requires proof of two or more predicate criminal acts "that were related and that amounted to, or threatened the likelihood of, continued criminal activity." *H.J. Inc.*, 492 U.S. at 237. Here, the Complaint fails to plead *any* predicate acts with particularity. Further, MOHELA's alleged statements made before and during the refinancing could not establish continued criminal activity because Caldiero's factual allegations relate to, at most, statements made in a short time frame to a single borrower. Caldiero's speculative assertions of a broader conspiracy affecting putative class members are entirely conclusory and should be afforded no weight. Consequently, Caldiero's RICO claims must be dismissed under Rule 12(b)(6) for failure to state a claim.

Third, Caldiero's claim against MOHELA under the Missouri Merchandising Practices Act (MMPA) fails because (aside from the claim's lack of factual basis) the MMPA only permits a private right of action against a "person", and as an instrumentality of the state, MOHELA is not a "person" under the MMPA. RSMo. §407.025.1; RSMo. §407.010(5).

Fourth, Caldiero fails to allege any violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL) because the provision she relies on applies only to advertisements, not statements by individual employees.

### A.    Caldiero fails to sufficiently plead the basis for her fraud claims.

### 1.    Overview

"The purpose of the heightened pleading requirement in [Rule] 9(b) is to 'place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants from spurious charges of immoral and fraudulent behavior.'" *Grant v. Turner*, 505 Fed. Appx. 107, 111 (3d Cir. 2012). To satisfy that heightened standard, a plaintiff must "plead[] the date, place or time of the fraud," or provide "alternative means of injecting precision and some measure of substantiation into their allegations of fraud.[] Plaintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation." *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004) (quotation marks and citations omitted) (affirming dismissal of civil RICO claim under Rule 9(b)). *See also Silverstein v. Percudani*, 207 Fed. Appx. 238, 240 (3d Cir. 2006) (affirming dismissal of fraud claims for lack of particularity).

Notably, it is insufficient to allege that a corporate entity made misrepresentations; the misrepresentations must be attributed to a specific employee. *Frederico v. Home Depot*, 507 F.3d 188, 201 (3d Cir. 2007) (affirming dismissal of RICO

claim under Rule 9(b)). Further, with respect to RICO claims, "[d]etailed allegations regarding the fraudulent scheme overall are not a substitute for detailed allegations about the acts of mail or wire fraud." *Northeast Revenue, Servs, LLC v. Maps Indeed, Inc.*, No. 3:14-cv-00852, 2015 U.S. Dist. LEXIS 139253, at *23–24 (M.D. Pa. Oct. 13, 2015) (dismissing RICO claims for failure to plead mail and wire fraud with particularity).

Because each of Caldiero's claims sounds in fraud, they must all be pleaded with particularity. To state a cause of action under RICO, a plaintiff must plead that the defendant engaged in a pattern of "racketeering activity," which is defined by a list of crimes set forth in 18 U.S.C. § 1961. *See LabMD Inc. v. Boback*, 47 F.4th 164, 179 (3d Cir. 2022); 18 U.S.C. § 1961(1).[4] A RICO claimant must therefore allege the elements of the predicate criminal acts in addition to the other RICO elements. Here, Caldiero alleges Defendants committed the predicate acts of mail and wire fraud, Compl. ¶ 84, each of which include "a scheme to defraud" as an element. *United States v. Pharis*, 298 F.3d 228, 234 (3d Cir. 2002); *Hlista*, 649 Fed. Appx. at

---

[4]     Plaintiff's second cause of action, conspiring in a RICO enterprise, relies on Plaintiff's successful pleading of a substantive RICO claim. *Hlista v. Safe-guard Props., LLC*, 649 Fed. Appx. 217, 222 (3d Cir. 2016) ("[W]hen the pleadings do not state a substantive RICO claim, the RICO conspiracy claim must fail.") This claim is therefore subject to dismissal for the same reasons as the RICO claim.

221 n.10. A "scheme to defraud . . . must involve some sort of fraudulent misrepresentation or omission reasonably calculated to deceive persons of ordinary prudence and comprehension." *Lum*, 361 F.3d at 223.

Caldiero's state-law claims against MOHELA under the MMPA and Pennsylvania Unfair Trade Practices and Consumer Protection Law (UPTCPL) are also subject to Rule 9(b), which applies to any claim that "sound[s] in putatively fraudulent activity or representations", regardless of whether it is "expressly pleaded as 'fraud.'" *Butakis v. NVR, Inc.*, 668 F. Supp. 3d 349, 359 (E.D. Pa. 2023) (applying Rule 9(b) to UTPCPL claim).; *Browning v. Anheuser-Busch*, 539 F. Supp. 3d 965, 971 (W.D. Mo. 2021) ("When an MMPA claim sounds in fraud . . . it must satisfy the heightened pleading requirements of Rule 9(b).") Caldiero's claims here unambiguously sound in fraud. *See* Compl. ¶¶ 100–01, 108–09, 115, 121 (describing alleged "fraud," "misrepresentation," and "deception").

### 2.    Affirmative Statements

The gravamen of the Complaint is that "[a]round the beginning of 2018," an unspecified PHEAA employee, through unknown channels, "assured [Caldiero] that [the contemplated] refinancing would preserve her eligibility for PSLF." Compl. ¶ 38. At some unspecified point thereafter, an unnamed MOHELA employee—again through unspecified channels—"also represented to Plaintiff that she would still be eligible for PSLF after the refinancing." Compl. ¶ 40.

These allegations fall far short of pleading "the who, what, when, where, and how" required by Rule 9(b). *See Kelly v. Ocwen Fin. Corp.*, No. 3:17-CV-32, 2017 U.S. Dist. LEXIS 37992, at *25 (M.D. Pa. March 15, 2017) (recommending dismissal of plaintiff's claims under Rule 9(b)). Neither allegation identifies the name or even the job title of the employee at PHEAA or MOHELA who allegedly made the representations. Neither allegation identifies whether the representations were made telephonically or in some other way. Neither allegation even identifies the *month* in which the alleged misrepresentations were made, let alone the date.

The failure to satisfy Rule 9(b) is not a trivial infraction in a case of this nature. Caldiero contends that MOHELA intentionally conspired to fraudulently misrepresent, to her and many others, an easily verifiable piece of public information in violation of its federal loan-servicing obligations. She bases that claim on a one-sentence recounting of an unsubstantiated oral conversation with an unspecified person that happened over six years ago. MOHELA is entitled to know the alleged underlying facts so it can adequately investigate and defend itself against Caldiero's claims. The Complaint fails to satisfy that high standard, and should be dismissed on that basis.

### 3. Omissions

Apparently in the alternative, Caldiero pleads that when she refinanced her loan, "MOHELA and KeyBank knew that she was PSLF-eligible, knew that refinancing would deprive her of PSLF benefits, did not inform her of these facts, and refinanced her loan regardless." Compl. ¶ 51. But pleading fraud by omission is no easy task. "[B]oilerplate and conclusory allegations will not suffice." *Twardzik v. HP Inc.*, No. 22-2650, 2023 U.S. App. LEXIS 23740, at *9 n.1 (3d Cir. Sept. 7, 2023) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997)). Further, an omission-based fraud claim is actionable only where the plaintiff has pleaded that defendants had a duty to disclose. *Catalus Capital USVI, LLC v. ServiceMaster Co., LLC*, No. 2017-17, 2019 U.S. Dist. LEXIS 43391, at *10 (D.V.I. Mar. 18, 2019).

The Complaint meets none of these requirements because Caldiero pleads virtually no details around her private student loan refinancing other than that MO-HELA "processed a loan transaction through which a Laurel Road private student loan to Plaintiff was originated[.]" Compl. ¶ 41. She does not identify what disclosures she received in connection with that transaction or what documents she signed. She also fails to allege the basis for a duty to disclose given that the unavailability of PSLF for private loans had been a matter of public record for nearly 10 years by that time. *See* 34 C.F.R. § 685.219(c)(1)(iii) (limiting PSLF eligibility to "eligible

Direct loans"). In short, the Complaint fails to satisfy the heightened pleading stand-ard of Rule 9(b) in connection with its passing assertion of an omission.

### 4. Post-Refinancing Statements

Caldiero's allegations of post-refinancing misrepresentations are irrelevant to the failure of her Complaint under Rule 9(b)—or more generally to her claims—because causation is an element of each of Caldiero's claims, and none of the alleged post-refinancing conduct contributed in any way to her sole alleged harm of loss of PSLF eligibility.

A civil RICO plaintiff must "show that a RICO predicate offense not only was a 'but for' cause of his injury, but was the proximate cause as well." *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 9 (2010) (quotation marks omitted). UTPCPL claims, too, accrue to "[a]ny person" who "suffers any ascertainable loss … as a result of" a deceptive act or practice. 73 P.S. §201-9.2(a). *See also Kirwin v. Sussman Auto.*, 149 A.3d 333, 336 (Pa. Super. Ct. 2016) (UTPCPL plaintiff must prove justi-fiable reliance and causation). Similarly, an MMPA claim requires that a plaintiff "suffer[] an ascertainable loss … as a result of" an MMPA violation. R.S.Mo. § 407.025(1). *See also Owen v. GMC*, 533 F.3d 913, 922 (8th Cir. 2008) ("[T]he plain language of the MMPA demands a causal connection between the ascertainable loss and the unfair or deceptive merchandising practice.").

Here, Caldiero alleges various statements by MOHELA following her refinancing that she contends were consistent with misrepresentations preceding the refinancing about her eligibility for PSLF: unspecified statements by MOHELA between 2018 and 2023 that she was on track for PSLF, statements by MOHELA employees in March 2023 that she needed only employment verification to qualify for forgiveness, and statements on the PSLF Payment Tracker that Caldiero accessed in December 2023. Compl. ¶¶ 42–43, 45. But because private loan consolidation is irreversible, Caldiero's alleged harm occurred *when she refinanced*. *See* Consumer Financial Protection Bureau, Should I consolidate or refinance my student loans?, *available at* https://www.consumerfinance.gov/ask-cfpb/should-i-consolidate-re-finance-student-loans-en-561/ (last accessed May 10, 2024) ( "refinancing your federal student loan into a private student loan . . . cannot be reversed"). Consequently, it is impossible for the post-refinancing statements to have contributed to Caldiero's loss of PSLF eligibility, and those statements are therefore irrelevant to whether Caldiero's allegations relating to pre-refinancing statements are sufficient to satisfy Rule 9(b) or plead a civil RICO claim.

**B.    Caldiero fails to plead a civil RICO claim because she has not alleged a "pattern of predicate acts."**

A plaintiff pursuing a civil RICO claim must prove, among other things, that defendants engaged in "a *pattern* of racketeering activity." 18 U.S.C. § 1962(a)

(emphasis added). That requires proof at least two predicate acts—i.e., separate instances of mail or wire fraud—that "are related, and amount to or pose a threat of continued criminal activity." *Kolar v. Preferred Real Estate Invs., Inc.*, 361 Fed. Appx. 354, 363 (3d Cir. 2010) (citing *H.J., Inc.*, 492 U.S. at 239 (1989)). Moreover, plaintiff must prove that *each defendant* engaged in two predicate acts. *Northeast Revenue, Servs, LLC*, 2015 U.S. Dist. LEXIS 139253, at *20 ("For a RICO claim, Plaintiff must still plead at least two predicate acts by each Defendant[.]") (dismissing civil RICO claim for failure to plead pattern of racketeering activity).

To "curb widespread attempts to turn routine commercial disputes into civil RICO actions," the pattern requirement "forestall[s] RICO's use against isolated or sporadic criminal activity, and [] prevent[s] RICO from becoming a surrogate for garden-variety fraud actions properly brought under state law." *Luzerne County Ret. Bd. v. Makowski*, 627 F. Supp. 2d 506, 545 (M.D. Pa. 2007) (quoting *Jennings v. Auto Meter Prods.*, 495 F.3d 466, 472–73 (7th Cir. 2007)) (quotation marks omitted). Consequently, "RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." *Kolar*, 361 Fed. Appx. at 363.

Here, Caldiero fails to plead that MOHELA engaged in a "pattern of predicate acts" necessary to establish a RICO claim. As an initial matter, as detailed

above, Caldiero has not pleaded with particularity *any* instances of mail or wire fraud, much less a pattern of such instances. At most, she alleges that MOHELA engaged in *one phone call* in which an unspecified employee made an allegedly fraudulent statement about the impact of refinancing on her PSLF eligibility. Because Caldiero pleads no other pre-refinancing predicate act that causally contributed to her loss of PSLF eligibility, her RICO claim fails.

Caldiero's RICO claim also fails because she has not pleaded continuity, i.e., that MOHELA engaged in two predicate acts that amount to or pose a threat of *continued criminal activity.* To establish continuity, a plaintiff must either demonstrate "closed-ended" continuity ("a closed period of repeated conduct") or open-ended continuity ("past conduct that by its nature projects into the future with a threat of repetition"). *H.J., Inc.*, 492 U.S. at 241.

Closed-ended continuity requires "a series of related predicates extending over a substantial period of time," meaning more than a few months. *Id.* at 242 (finding "[p]redicate acts extending over a few weeks or months" insufficient). Here, the representations made in connection with the refinancing of Caldiero's loans allegedly occurred during a single conversation "around the beginning of 2018," predating a refinancing that also occurred "around the beginning of 2018." Compl. ¶¶ 38–42. As detailed above, post-refinancing statements did not cause Caldiero's alleged harm and are therefore irrelevant to the continuity analysis. *See*

18

*Kehr Packages v. Fidelcor, Inc.*, 926 F.2d 1406, 1419 (3d Cir. 1991) ("In this case, the damage to plaintiffs was largely accomplished at the moment of settlement. Although the number of misrepresentations can be an important factor [in establishing continuity], the confirmatory misrepresentations made after settlement do not transform the actions of [defendants] into a 'pattern of racketeering activity.'"). Because the events culminating in Caldiero's refinancing occurred within the space of, at most, a few months, Caldiero cannot satisfy closed-ended continuity.

Nor has Caldiero pleaded open-ended continuity, which is based on a tacit or overt threat that defendants will continue to engage in future criminal activity. *H.J., Inc.*, 492 U.S. at 242. Conclusory allegations about activity of that nature, however, are insufficient to establish open-ended continuity. *See Klineburger v. Kell*, No. 16-5637, 2017 U.S. Dist. LEXIS 65650, at *23–24 (E.D. Pa. May 1, 2017) (collecting cases and dismissing civil RICO claim based on conclusory allegations of open-ended continuity relating to third-party interactions). Here, Caldiero pleads facts relating to her own experience, but then speculatively extrapolates that other borrowers were or will be similarly impacted. *See* Compl. ¶ 49. Those conclusory allegations are clearly insufficient to demonstrate open-ended continuity.

Further, courts consistently caution that continuity is rarely established where the plaintiff is the only identified victim. *See Zahl v. N.J. Dep't of Law & Pub. Safety Div. of Consumer Affairs*, 428 Fed. Appx. 205, 211 (3d Cir. 2011)

(holding the number of victims as "relevant to RICO continuity"); *Home Orthope-dics Corp. v. Rodríguez*, 781 F.3d 521, 530 (1st Cir. 2015) ("We have consistently declined to find continuity where the RICO claim concerns a single, narrow scheme targeting few victims.") (quotation marks and citations omitted); *Ctr. for Immigration Studies v. Cohen*, 806 Fed. Appx. 7, 8 (D.C. Cir. 2020) ("We've re-peatedly said that it's virtually impossible to identify [a RICO] pattern by alleging a single scheme, single injury, and few victims.") (quotation marks and citations omitted). Here, Caldiero avers a wide-ranging conspiracy affecting many student loan borrowers, but in practice pleads conduct relating exclusively to herself and her own refinancing.

In sum, Caldiero has failed to allege a pattern of predicate acts because (1) she has failed to allege *any* predicate acts, and (2) she has not pleaded the contin-ued criminal conduct necessary for a civil RICO claim. Caldiero's RICO claims should be dismissed.

### C. Caldiero fails to plead an MMPA claim because MOHELA is not a "person" under the MMPA

The MMPA proscribes "deception, fraud, false pretense, false promise, mis-representation, unfair practice or the concealment, suppression, or omission of any material fact" in connection with the sale of "merchandise," including "services." RSMo. §§ 407.020.1 and 407.010(4). Section 407.025.1, which contains the ele-ments of a private civil action to assert an MMPA violation, provides in relevant

part: "[a]ny person who … suffers an ascertainable loss of money or property … as a result of the use or employment *by another person* of a method, act or practice declared unlawful by section 407.020 may bring a private civil action[.]" R.S.Mo. § 407.025.1 (emphasis added). Section 407.010(5) defines the term "person" to mean "any natural person or his legal representative, partnership, firm, *for-profit or not-for-profit corporation*, whether domestic or foreign, company, foundation, trust, business entity or association, and any agent, employee, salesman, partner, officer, director, member, stockholder, associate, trustee or cestui que trust thereof." (emphasis added). RSMo. § 407.010(5).

MOHELA, which is a public instrumentality and a body politic and corporate of the State of Missouri, does not meet this definition of "person." RSMo. § 173.360 ("The authority is hereby constituted a public instrumentality and body corporate, and the exercise by the authority of [its] powers … shall be deemed to be the performance of an essential public function."). MOHELA is neither a for-profit corporation, governed by Chapter 351, RSMo., nor a not-for-profit corporation governed by Chapter 355, RSMo. *See, e.g., Bottorff-Arey v. Truman State Univ.*, 633 S.W.3d 508, 515 (Mo. Ct. App. 2021) (affirming dismissal of MMPA claim against Truman State University, a "public corporation" outside the definitional structure of the MMPA). Thus, Caldiero's MMPA claim against MOHELA fails as a matter of law.

21

**D.    Caldiero fails to plead a UTPCPL claim because she does not identify any false advertisements.**

Caldiero avers that Defendants engaged in a deceptive act under Section 201-2(4)(v) of the UTPCPL by "represent[ing] that goods or services have characteristics, benefits, or quantities that they did not have[.]" Compl. ¶ 121. "[C]ourts have ruled that [Section 201-2(4)(v) applies] only to claims of false advertising[,]" and that false advertising is insufficiently pleaded when the representations at issue were made by "individual employees or agents" of an entity. *Seldon v. Home Loan Servs.*, 647 F.Supp. 2d 451, 466-67 (E.D. Pa. 2009); *Dicicco v. Citizens Fin. Grp., Inc.*, No. 15-267, 2015 U.S. Dist. LEXIS 120798, *43, n.12 (E.D. Pa. Sep. 10, 2015).

Here, Caldiero's claims depend entirely on her reliance on alleged statements made to her by individual PHEAA and MOHELA employees. Compl. ¶¶ 38, 40. Because these statements are not "advertising," Caldiero's UTPCPL claim should be dismissed.

## V.    CONCLUSION

For the foregoing reasons, the Court should grant MOHELA's motion to dismiss based on failure to plead fraud-based claims with particularity under Rule 9(b), and failure to plead each of her claims under Rule 12(b)(6).

Respectfully submitted,

Date:  May 10, 2024                    */s/ Thomas F. Burke*
                                       Thomas F. Burke

**Ballard Spahr LLP**
1735 Market Street, 51st Floor
Philadelphia, Pennsylvania 19103
T: 215.665.8500
burket@ballardspahr.com

Matthew D. Guletz (*admitted pro hac vice*)
**THOMPSON COBURN LLP**
  mguletz@thompsoncoburn.com
One US Bank Plaza
St. Louis, MO 63101
Telephone: 314-552-6000

*Counsel for Defendant Higher Education Loan Authority of the State of Missouri*

## <u>STATEMENT PURSUANT TO LOCAL RULE 7.8</u>

I hereby certify pursuant to Local Rule 7.8(b)(2) that the total number of words in this brief, inclusive of point headings and footnotes and exclusive of pages containing the table of contents, table of citation, proof of service, and this Statement is 4,997.

Dated: May 10, 2024

/s/ Thomas F. Burke
Thomas F. Burke
**Ballard Spahr LLP**
1735 Market Street, 51st Floor
Philadelphia, Pennsylvania 19103
T: 215.665.8500
burket@ballardspahr.com

*Counsel for Defendant Higher Education Loan Authority of the State of Missouri.*

1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this May 10, 2024, I caused a true and correct copy of the foregoing Memorandum in Support of MOHELA's Motion to Dismiss to be served on all counsel of record via the Court's ECF system, and such documents are available for viewing and downloading therefrom.

*/s/ Thomas F. Burke*
Thomas F. Burke
