# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOANNE CALDIERO,** *individually and on behalf of all others similarly situated,* | : | **No. 3:24cv315** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **MISSOURI HIGHER EDUCATION LOAN AUTHORITY, KEYBANK NATIONAL ASSOCIATION d/b/a LAUREL ROAD, and PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY d/b/a FEDLOAN SERVICING,** | : | |
| **Defendants** | : | |

········································································

## MEMORANDUM

Plaintiff Joanne Caldiero has filed the instant class action lawsuit pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.A. §§ 1962, 1964. (Doc. 1, Compl.) Before the court for disposition are the following:

1) A motion to dismiss plaintiff's complaint under Federal Rules of Civil Procedure 9(b) and 12(b)(6) filed by Defendant Missouri Higher Education Loan Authority ("MOHELA");

2) A motion to dismiss pursuant to Rule 12(b)(6) filed by the

Pennsylvania Higher Education Assistance Agency ("PHEAA");

3) A motion to dismiss pursuant to Rule 12(b)(6) filed by KeyBank

National Association ("KeyBank");

4) A motion to strike class allegations filed jointly by Defendants

MOHELA and PHEAA; and

5) A motion to strike class allegations filed by Defendant KeyBank.

Having been fully briefed, the motions are ripe for decision.

## Background[1]

Plaintiff Joanne Caldiero, a registered nurse, obtained student loans to pay for her education, including an associate's degree, a bachelor's degree, and two master's degrees. (Doc. 1, Compl. ¶¶ 29-31). In September 2012, plaintiff consolidated her student loans into two federal Direct Consolidation Loans, a type of loan eligible for forgiveness under the Public Service Loan Forgiveness Program ("PSLF"). (Id. ¶ 32).

The PSLF is part of the Direct Student Loan program under the federal Higher Education Act. (Id. ¶¶ 13-15). Under the PSLF, the federal government

---

[1] These brief background facts are derived from plaintiff's complaint. At this stage of the proceedings, we must accept all factual allegations in the complaint as true. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). The court makes no determination, however, as to the ultimate veracity of these assertions.

2

forgives the balance on qualifying Direct Student Loans after: (a) 120 separate, on-time monthly payments; (b) made under a qualifying repayment plan; (c) while the borrower is working full-time; (d) for a qualifying public-service employer. (Id. ¶ 16). The program applies only to federal loans, not private student loans. Congress designed the PSLF to support those working in a wide range of high-demand public service careers, such as servicemembers, teachers, police officers, nurses, and other public servants. (Id. ¶ 15).

Approximately six years into her ten-year PSLF repayment period, plaintiff encountered difficulty in paying her monthly bills. Defendant PHEAA was servicing the loans, and she contacted them for assistance (Id. ¶ 35, 38). PHEAA suggested that plaintiff refinance her loans again and assured her that such refinancing would preserve her eligibility for forgiveness of the loans under the PSLF. (Id. ¶ 38). PHEAA referred plaintiff to MOHELA for this second refinancing. (Id. ¶ 39). MOHELA worked with, and as an agent of, Defendant KeyBank. (Id. ¶ 40). In return for the referral, PHEAA obtained a referral fee or some other form of financial benefit from MOHELA according to the plaintiff. (Id. ¶ 39).

Defendant MOHELA processed a loan transaction through which plaintiff obtained a private student loan from Laurel Road, a national online bank owned by Defendant KeyBank. (Id. ¶¶ 25, 41). The proceeds of the private student loan

3

paid off plaintiff's federal student loans.  (Id. ¶ 41). This private student loan was not eligible for forgiveness under the PSLF program, and neither MOHELA nor KeyBank ever informed plaintiff that they had refinanced her PSLF-eligible federal student loan into a private student loan.  Rather, over the next five years Defendant MOHELA represented to plaintiff that the loan was PSLF eligible.  (Id. ¶ 42).[2]

Plaintiff believed that she had met the ten-year threshold for a PSLF discharge in March of 2023.  (Id. ¶ 44).  She contacted MOHELA to confirm that she had met the requirements and that her loans could be forgiven.  (Id.) Several agents from Defendant MOHELA including a Mr. Santiago, a Mr. Coleo, and a Mr. Kahlil, reviewed Plaintiff's account and told her that she had met her obligations under PSLF but she needed to finalize her application by verifying her final three years of employment.  (Id. ¶ 45).  After she followed the instructions that Mr. Kahlil had provided to her, plaintiff was unable to reach Kahlil to confirm her loan forgiveness.  (Id. ¶ 46).  Ultimately, she contacted MOHELA's support line, and according to plaintiff, she was informed for the first time that she had

---

[2] In support of its motion to strike class allegations, Defendant KeyBank has filed evidence that it twice disclosed to plaintiff prior to refinancing the loans that such refinancing would make the loans ineligible for PSLF.  (See Doc. 51, 2-4).  For purposes of this motion, however, the court accepts the complaint's allegations as true despite what may later be proven.

consolidated her loans into private student loans which were owned by KeyBank and ineligible for PSLF. (Id. ¶ 47).

Plaintiff asserts that discovery in this case will reveal that plaintiff's experience was not unique and that the defendants had common policies and practices to steer PSLF-eligible loans into private student loan refinancings without disclosing that such refinancing would result in the loss of the opportunity for PSLF forgiveness. (Id. ¶ 49).

Plaintiff then instituted the instant putative class action where she seeks to represent a nationwide class of "[a]ll student loan borrowers who, (a) according to MOHELA's records, had indicated an interest in the [PSLF] program, and (b) were refinanced into Laurel Road private student loans." (Id. ¶ 70). Plaintiff defines a proposed PHEA subclass as: "All members of the Class who were referred to Defendant MOHELA by Defendant PHEAA." (Id. ¶ 71). She defines the Pennsylvania subclass as: "All members of the Class who are residents of Pennsylvania." (Id. ¶ 72).

Plaintiff's claims for relief include the following:[3]

**Count I** – Operation of RICO Enterprise, 18 U.S.C. § 1962(c), against Defendants MOHELA and KeyBank;

---

[3] Plaintiff's complaint lists its causes of actions as "First Cause of Action", "Second Cause of Action", and so on. For clarity, the court will refer to them as Count I, Count II, etc.

**Count II** – Conspiring in a RICO Enterprise, 18 U.S.C. § 1962(d), against all defendants;

**Count III** – Violation of Ohio's Consumer Sales Practices Law, Ohio Rev. Code Ann. §§ 1345.01 *et seq.*, against Defendant KeyBank;

**Count IV** – Violation of Missouri's Merchandising Practices Law, Mo. Ann. Stat. §§ 407.100 *et seq.*, against Defendant MOHELA;

**Count V** – Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §§ 201-1 *et seq.*, against Defendant PHEAA;

**Count VI** – Violation of the Pennsylvania UTPCPL as to the Pennsylvania Subclass, against all defendants.

In response to the complaint all defendants filed motions to dismiss. Additionally, Defendants MOHELA and PHEA filed a joint motion to strike class allegations from the complaint. Defendant KeyBank filed a separate motion to strike class allegations. The parties have briefed their positions, bringing the case to its present posture.

**Jurisdiction**

Because plaintiff brings several causes of action under the federal RICO statute, the court has federal question jurisdiction. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the

Constitution, laws, or treaties of the United States."). The court has supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

**Standard of Review**

Defendants filed their motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The court tests the sufficiency of the complaint's allegations when considering a Rule 12(b)(6) motion. All well-pleaded allegations of the complaint must be viewed as true and in the light most favorable to the non-movant to determine whether, "'under any reasonable reading of the pleadings, the plaintiff may be entitled to relief.'" Colburn v. Upper Darby Twp., 838 F.2d 663, 665-66 (3d Cir. 1988) (quoting Estate of Bailey by Oare v. Cnty. of York, 768 F.2d 503, 506 (3d Cir. 1985)). The plaintiff must describe "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' [each] necessary element" of the claims alleged in the complaint. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Moreover, the plaintiff must allege facts that "justify moving the case beyond the pleadings to the next stage of litigation." Id. at 234-35. In evaluating the sufficiency of a complaint the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."

Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citations omitted).  The court does not have to accept legal conclusions or unwarranted factual inferences.  See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).

The federal rules require only that plaintiff provide "a short and plain statement of the claim showing that the pleader is entitled to relief," a standard which "does not require detailed factual allegations," but a plaintiff must make "a showing, rather than a blanket assertion, of entitlement to relief that rises above the speculative level." McTernan v. N.Y.C., 564 F.3d 636, 646 (3d Cir. 2009) (citations and internal quotations and quotation marks omitted).  The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  Such "facial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).  "[T]he factual detail in a complaint [cannot be] so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8." Phillips, 515 F.3d at 232 (citation omitted).  "Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the

elements of a cause of action will not do.'" DelRio-Mocci v. Connolly Props., Inc.,
672 F.3d 241, 245 (3d Cir. 2012) (quoting Twombly, 550 U.S. at 555).

**Discussion**

As noted, plaintiff's complaint is comprised of six counts.  The defendants
move to dismiss them all, and the court will discuss each count *seriatim*.

## Count I

Count I of plaintiff's complaint alleges that Defendants MOHELA and
KeyBank operated a RICO Enterprise in violation of 18 U.S.C. § 1962(c).  (Doc.
1, Compl. ¶¶ 79-89).  Plaintiff claims that MOHELA and KeyBank operated a
"Fraudulent Student Loan Refinancing Enterprise" with the purpose of steering
those with federal student loans into private student loans.  (Id. ¶¶ 80-81).
Through this enterprise, the defendants increased their profits by depriving the
borrowers of the benefits and entitlements under the federal loan programs. (Id.)
MOHELA and KeyBank move to dismiss Count I.[4]

With RICO, Congress made it a crime "to conduct" an "enterprise's affairs
through a pattern of racketeering activity."  18 U.S.C. § 1962.  Although RICO is
generally criminal in nature, it also provides for civil remedies.  As to a civil RICO
action, "[a]ny person injured in his business or property by reason of a" RICO

---

[4] For purposes of clarity, MOHELA and KeyBank will be referred to collectively as "defendants"
in this section discussing Count I.

violation may recover, *inter alia*, treble damages and attorney's fees. 18 U.S.C. § 1964(c).

To assert a proper civil RICO action, a plaintiff must plead the following: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Lum v. Bank of Am., 361 F.3d 217, 223 (3d Cir. 2004) (abrogated on other grounds). "Racketeering activity" is defined in terms of activity that violates other laws, including more than fifty (50) specifically mentioned federal statutes, which forbid, for example, federal mail fraud under 18 U.S.C. § 1341 and federal wire fraud under 18 U.S.C. § 1343. See 18 U.S.C. § 1961(1). A pattern of racketeering activity requires at least two predicate acts of racketeering. See 18 U.S.C. § 1961(5). The plaintiff's complaint allege that defendants committed at least two predicate acts, mail fraud in violation of 18 U.S.C. § 1341, and wire fraud in violation of 18 U.S.C. § 1343.

"[T]he elements necessary to establish the offense of mail fraud are (1) a scheme or artifice to defraud for the purpose of obtaining money or property and (2) use of the mails in furtherance of the scheme." United States v. Yusuf, 536 F.3d 178, 187 (3d Cir. 2008). Similarly, wire fraud consists of a scheme or artifice to defraud, with the specific intent to defraud, and the use of interstate wire communications in furtherance of the scheme. United States v. Andrews, 681 F.3d 509, 518 (3d Cir. 2012). The law provides that the RICO statute is to

be read broadly, and it may apply to many "garden variety" fraud cases.  <u>Kolar v.</u>
<u>Preferred Real Estate Invs., Inc.</u>, 361 F. App'x 354, 363 (3d Cir. 2010).  However,
RICO claims "premised on mail or wire fraud must be particularly scrutinized
because of the relative ease with which a plaintiff may mold a RICO pattern from
allegations that, upon closer scrutiny, do no support it."  <u>Id.</u>

Several issues are raised by the defendants regarding Count I, and the
court will address each in turn.

### A. Specificity of Fraud Allegations

Defendants first argue that plaintiff has not alleged fraud with the specificity
required by Rule 9(b).  Rule 9(b) of the Federal Rules of Civil Procedure provides
a heightened pleading requirement for allegations of fraud.  Specifically, Rule
9(b) states: "In all averments of fraud or mistake, the circumstances constituting
fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and
other condition of mind of a person may be averred generally."  "Pursuant to Rule
9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud
with sufficient particularity to place the defendant on notice of the precise
misconduct with which it is charged. To satisfy this standard, the plaintiff must
plead or allege the date, time and place of the alleged fraud or otherwise inject
precision or some measure of substantiation into a fraud allegation."  <u>Frederico v.</u>

Home Depot, 507 F.3d 188, 200 (3d Cir. 2007) (internal quotation marks, editing marks, and citation omitted).

Plaintiff's claim of fraud is that MOHELA and PHEA informed her that she would still be eligible for the PSLF loan forgiveness program if she refinanced her loan with MOHELA. (Doc. 1, ¶¶ 38-40).[5] Such refinancing, however, made her ineligible for such forgiveness. Defendants argue that plaintiff's allegations fall well short of providing the specificity required by Rule 9(b), that is the who, what, when, where, and how. Plaintiff fails to allege the name or job title of the employee at MOHELA or PHEA who allegedly made the representations, or the manner in which the representations were made, or the date when they occurred besides indicating that it was "[a]round the beginning of 2018". (Id. § 38).

Plaintiff responds that her fraud allegations are more extensive than defendants suggest. For example, MOHELA and KeyBank refinanced the loan, through KeyBank's tradename Laurel Road, but omitted telling her that it had been refinanced into a private student loan. (Doc. 1, ¶¶ 41-42). Additionally, MOHELA and KeyBank have failed to provide her with any documentation of the Keybank/Laurel Road loan. (Id. ¶ 48). MOHELA also continued to represent that the loan was PSLF-eligible through its PSLF Payment Tracker ("PPT") indicating

---

[5] Plaintiff does not indicate whether the defendants informed her via electronic communications so as to qualify for wire fraud or through the mails so as to qualify for mail fraud.

that plaintiff's loan payments were applied toward forgiveness. (Doc. 1, Exh. A). MOHELA provided this PPT on its online account portal for five years after the loan had been refinanced into a non-PSLF applicable loan. (Doc. 1, ¶ 42). Thus, it appeared to plaintiff that she had been making PSLF-eligible payments from May 2013 until at least March 2023. (Id.)

Plaintiff further points out that she alleges that the defendants treated others in a similarly fraudulent manner. Her "experience was not unique and . . .Defendants PHEAA, MOHELA, and KeyBank had common policies, practices, scripts, and procedures to steer PSLF-eligible federal loan borrowers into private student loan refinancings without disclosing that such refinancing would result in the loss of the opportunity to obtain a PSLF discharge, or, worse, through the use of affirmative, false representation that PSLF eligibility would continue." (Id. ¶ 49). The complaint avers that PHEAA and MOHELA induced plaintiff and class members to privately refinance their federal loans with the misrepresentation that they would remain eligible for public service loan forgiveness. Per the complaint, all defendants knew plaintiff was PSLF eligible and that the refinancing would make her ineligible for PSLF. Regardless, they refinanced her loans. (Id. ¶¶ 50-51).

Plaintiff's position is that all these allegations are sufficient to plead her fraud claims. They identify the nature of the misrepresentation, the defendants'

knowledge of the scheme, and each defendant's role in the scheme. The court agrees. Although, the specific date and the name of the person who made the alleged misrepresentations are not provided, plaintiff has "otherwise inject[ed] precision or some measure of substantiation" into the fraud allegation. See Frederico, 507 F.3d at 200 (3d Cir. 2007). Accordingly, the plaintiff has provided sufficient specificity for the purposes of Rule 9(b). Because the court has concluded that plaintiff has pled her fraud allegations with the required specificity, the next question is whether she has properly alleged a pattern of racketeering activity.

**B. Pattern of Racketeering Activity**

A civil RICO plaintiff must prove, *inter alia*, that the defendants engaged in "a pattern of racketeering activity." 18 U.S.C. § 1962(a). A "pattern of racketeering activity" consists of at least two predicate acts of racketeering activity. U.S. v. Bergrin, 650 F.3d 257, 266-67 (3d Cir. 2011); 18 U.S.C. § 1961(5). In addition to the two predicate acts of racketeering activity, a plaintiff must establish that the predicate acts amount to or pose a threat of continued criminal activity. Kolar v. Preferred Real Estate Invs., Inc., 361 F. App'x 354, 363 (3d Cir. 2010). Defendants argue that plaintiff has not sufficiently alleged either of these requirements.

### 1. Predicate Acts

First defendants argue that plaintiff has not alleged a pattern of racketeering activity. Per defendants, plaintiff has at most averred one telephone call with an unspecified employee who purportedly made a fraudulent statement about the impact of refinancing her loan. Defendant argues that one contact does not amount to a pattern because plaintiff needs at least two acts of racketeering activity. Plaintiff argues that MOHELA's argument minimizes her allegations. Plaintiff argues that in addition to the contact plaintiff had with MOHELA, she also alleges that MOHELA continued to represent that the loan was PSLF-eligible through its PSLF Payment Tracker ("PPT") indicating that plaintiff's loan payments were applied toward forgiveness. (Doc. 1, Exh. A).

The court concludes that the plaintiff has not properly alleged the two predicate acts of racketeering. As noted above, plaintiff's RICO claim is based upon wire fraud and mail fraud. The complaint does not specifically allege either. The complaint avers as follows: "Plaintiff Caldiero was having difficulty paying all her monthly bills, including her student loan payments, and asked Defendant PHEAA for help in evaluating her income and payment schedule. PHEAA recommended that she could reduce her monthly payment by again refinancing her loans and assured her that this refinancing would preserve her eligibility for PSLF." (Doc. 1, Compl. ¶ 38). The complaint further alleges that "Defendant

MOHELA, working with and as an agent of Defendant KeyBank, also represented to Plaintiff that she would still be eligible for PSLF after refinancing." (Id. ¶ 40).  These are the sole allegations of a direct communication between plaintiff and the defendants relating to the RICO action. The nature of the communications is not specified, that is, whether they were in person, over the telephone, via the internet, or through the mail.  Without a clear averment of the type of communication, it would be improper for the court to conclude that plaintiff has sufficiently alleged either wire fraud or mail fraud.[6]  RICO is a complex statute with much caselaw interpreting and clarifying it.  Plaintiff charges defendants with engaging in a nefarious enterprise to defraud federal student loan borrowers.  Plaintiff must, therefore, at the very least comply with the most basic requirements of alleging two predicate acts.  Plaintiff here has failed to do so.

Plaintiff attempts to use as predicate acts several other communications that she had with the Defendant MOHELA after obtaining her loan.  These communications, however, are not predicate acts because they took place after the fraud.  The fraud alleged by the plaintiff is PHEA and MOHELA inducing her

---

[6] In her brief, plaintiff indicates that that it is reasonable to infer that plaintiff in East Stroudsburg, Pennsylvania, communicated with Missouri-based MOHELA via telephone. (Doc. 42, 18 at n.11).  The court will not make such an inference.  Plaintiff claims wire fraud and mail fraud, the complaint should specify which communications were made through which method and not leave the court to make potentially inappropriate inferences.

to accept a private student loan even though it did not qualify for the loan forgiveness program.   (See Doc. 1, Compl. ¶ 81 ("The Defendants . . . had a common purpose to steer Class members into private student loans and fraudulently deprive them of their benefits and entitlements under the federal loan programs for their own profit."))  This alleged fraud was complete when plaintiff secured the private student loan.  Alleged acts performed by the defendants after the fact to allegedly cover up or conceal the fraud are not proper predicate acts.[7] See, e.g., The Knit With v. Knitting Fever, Inc., 625 F. App'x 27, 38 (3d Cir. 2015) (discussing that a conspiracy to cover up a conspiracy has some connection to the initial conspiracy, but such connection alone does not make the two conspiracies part of the same pattern of racketeering).  Accordingly, plaintiff has not alleged two predicate acts and her RICO claim will be dismissed.

## 2.  Continued Criminal Activity

As noted above, to properly plead a RICO cause of action, in addition to two predicate acts, a plaintiff must establish that the predicate acts amount to or pose a threat of continued criminal activity.  Kolar, 361 F. App'x at 363. The court has concluded that plaintiff's RICO claim fails as she has not alleged two

---

[7] Such fraudulent concealment, however, could possibly serve to extend the statute of limitations.  Davis v. Grusemeyer, 996 F.2d 617, 623 (3d Cir. 1993).

predicate acts. For purposes of completeness, however, an analysis of the "continued criminal activity" factor follows.

"A 'pattern of racketeering activity' requires commission of at least two predicate offenses on a specified list. 18 U.S.C.A. §§ 1961(1), (5) (1984 & Supp.1990). . . . But a pattern requires more than commission of the requisite number of predicate acts. In H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), the Supreme Court stressed that a plaintiff must show also 'that the racketeering acts are related, and that they amount to or pose a threat of continued criminal activity.' Id. at 239, 109 S.Ct. at 2900 (emphasis in original)." Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1411-12 (3d Cir. 1991).

"Continuity" is both a closed and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. See Barticheck v. Fidelity Union Bank/First National State, 832 F.2d 36, 39 (3d Cir. 1987). Here, plaintiff has alleged neither a proper closed-ended nor an open-ended continuity of racketeering activity.

With regard to closed continuity, the law provides:

A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this

18

requirement: Congress was concerned in RICO with long-term criminal conduct.

H.J. Inc., 492 U.S. at 242.

Here, plaintiff's complaint is silent as to how long it took for the defendants to complete the alleged fraud. At most, however, it appears as if a few weeks or months passed between her initial inquiry and when she secured the private student loan. But the complaint is unclear, thus plaintiff has not properly alleged a closed continuity. Moreover, if it were only weeks or months, plaintiff would not have properly alleged closed continuity. "[A]cts extending over a few weeks or months and threatening no future criminal conduct" do not satisfy the requirements of closed continuity. Id.

With regard to open-ended continuity the Third Circuit Court of Appeals has explained that, "One helpful consideration can be found in the [Supreme] Court's requirements for open-ended continuity. In H.J. Inc. the [Supreme] Court states that open-ended continuity is established when the commission of the predicate acts is 'a regular way of conducting defendant's ongoing legitimate business.' 492 U.S. at 243, 109 S.Ct. at 2902." Tabas v. Tabas, 47 F.3d 1280, 1295 (3d Cir. 1995). Here, plaintiff does allege the manner in which the defendants treated plaintiff and her loan is the manner in which they carry on their business.

The complaint avers: "Discovery will show that Plaintiff's experience was not unique and that Defendants PHEAA, MOHELA, and KeyBank had common

policies, practices, scripts, and procedures to steer PSLF-eligible federal loan borrowers into private student loan refinancings without disclosing that such refinancing would result in the loss of the opportunity to obtain a PSLF discharge, or worse, through the use of affirmative, false representations that PSLF eligibility would continue." (Doc. 1, Compl. ¶ 49). Moreover, plaintiff avers that defendants have used this scheme to defraud thousands or tens of thousands other borrowers. (Id. ¶ 73).[8] These conclusory factual statements - that because defendants treated plaintiff in this manner, they treated their other borrowers similarly - are no more than disguised legal conclusions, that defendants engaged in racketeering behavior. The court will not treat as true plaintiff's bare allegation that the defendants' regular way of doing business is to enrich themselves by fraudulently enticing borrowers into private student loans. Accordingly, plaintiff has not properly averred open-ended continuity. See, e.g., Lickman v. Rivkin, No. 3:05cv1793, 2006 WL 1744753, at *5 (M.D. Pa. June 21, 2006) ("Although the plaintiffs aver that the pattern of racketeering is defendants' regular way of doing business, we find that such a bare allegation is not sufficient."); Katz v. DeLuca, Civ. No. 23-1188, 2024 WL 2188905 * 9 (E.D. Pa. May 15, 1994 )("The plaintiffs assert, based on their limited experience with the defendants, that the defendants routinely conceal their business affiliation and

---

[8] Notably, the complaint does not name any of these other borrowers.

decline to honor insurance policies.  However, '[w]here a defendant's actions are narrowly directed to a single fraudulent goal and involve a limited purpose, these actions cannot, by themselves, underpin a pattern of racketeering activity.'  <u>Rapid Circuits</u>, 2011 WL 1666919, at *25 (citing <u>Kolar v. Preferred Real Est. Invs., Inc.</u>, 361 F. App'x 354, 365 (3d Cir. 2010))"). Accordingly, plaintiff has failed to plead non-conclusory facts to establish a pattern of racketeering activity.

Plaintiff has failed to properly allege a pattern of racketeering activity in that she has not pleaded two predicate acts or continuity. Accordingly the defendants' motion to dismiss Count I will be granted.

**Count II**

Count II of plaintiff's complaint alleges that all the defendants violated 18 U.S.C. § 1962(d) which makes it unlawful to conspire to violate RICO. (Doc. 1, Compl. ¶¶ 90-94).  Specifically, plaintiff avers that the defendants' conduct in furthering the aims of the "Fraudulent Student Loan Enterprise" was knowing and intentional and constitutes a conspiracy.  (<u>Id.</u> at ¶ 91).  All three defendants move to dismiss Count II.[9]

The law provides that a "RICO conspiracy is not a mere conspiracy to commit the underlying predicate acts.  It is a conspiracy *to violate RICO* – that is,

---

[9] For purposes of discussing Count II, the court will refer to all defendants collectively as "defendants".

to conduct or participate in the activities of a corrupt enterprise." <u>Zavala v. Wal-Mart Stores Inc.</u>, 691 F.3d 527, 539 (3d Cir. 2021).  The conspirators must agree to engage in a pattern of racketeering activity.  Here plaintiff has not alleged a pattern of racketeering activity. Thus she cannot allege that the defendants agreed to engage in it.  <u>See also</u> <u>Shearin v. E.F. Hutton Grp., Inc.</u>, 885 F.2d 1162, 1166–67 (3d Cir.1989) (RICO conspiracy requires "agreement to commit predicate acts and knowledge that the acts were part of a pattern of racketeering activity.").[10]  Count II will thus be dismissed.

## Count III

Count III of plaintiff's complaint asserts violation of Ohio's Consumer Sales Practices Law, OHIO REV. CODE ANN. § 1345.01 *et seq*.  (Doc. 1, Compl. ¶ 95-102).  This count is directed to Defendant KeyBank only.  Defendant KeyBank moves for dismissal of this count based upon several grounds.  (Doc. 31, Def. KeyBank Supp. Br. at 17-18).  Plaintiff does not dispute the dismissal of this count.  (Doc. 42, Pl.'s Oppo. Br. at 2).  Accordingly, the motion to dismiss Count III will be granted as unopposed.

---

[10] Defendant PHEAA argues that Count II is barred by the statute of limitations. The court will make no decision on the statute of limitations as it concludes that the conspiracy claim fails substantively.

## Count IV

Count IV of plaintiff's complaint alleges that Defendant MOHELA violated Missouri's Merchandising Practices Law, MO. ANN. STAT. §§ 407.100 *et seq*. Defendant MOHELA moves to dismiss this count on the basis that it is not a "person" which can be held liable under Missouri's Merchandising Practices Law. (Doc. 36, Def. MOHELA's Supp. Br. at 20-21). Plaintiff does not dispute the dismissal of this count. (Doc. 42, Pl.'s Oppo. Br. at 2 n. 2). Therefore, the motion to dismiss Count IV will be granted as unopposed.

## Count V and Count VI

Count V and VI of plaintiff's complaint alleges state law causes of action under the Pennsylvania UTPCPL. (Doc. 1, Compl. ¶¶ 111-1122). The defendants have moved to dismiss these counts. As the court is dismissing the RICO causes of action, the causes of action which provide this court federal jurisdiction, it will also dismiss the Pennsylvania state law causes of action. See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if - ... the district court has dismissed all claims over which it has original jurisdiction."); United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) (holding that when federal causes of action are dismissed, federal courts should dismiss pendent state claims). The court

takes no position on the merits of the arguments the parties have raised with regard to the UTPCPL causes of action.

**Motion To Strike**

In addition to the motions to dismiss, the defendants also filed motions to strike the class allegations from plaintiff's complaint. (Docs. 24, 50). Because the motions to dismiss will be granted, the motions to strike class allegations will be denied as moot.

**Conclusion**

Based upon the foregoing reasoning, the court finds that plaintiff has not properly alleged a pattern of racketeering activity, therefore, the RICO causes of action, Counts I and II, will be dismissed. Because the federal RICO causes of action will be dismissed, the court will also dismiss the pendent state law causes of action found in Counts V and VI. Counts III and IV will be dismissed because plaintiff does not oppose their dismissal. An appropriate order follows.[11]

Date: 3/31/25

JUDGE JULIA K. MUNLEY
United States District Court

---

[11] The many briefs filed regarding the motions have raised a multitude of issue. Only several of the issues raised have been addressed in this memorandum. The issues the court has not addressed, it has found moot due to its ruling on the other issues. The court makes no ruling on the merits of the unaddressed issues and arguments.